## Daniel Gabriel, Appellant v. Trinity Area School District, Appellee.

Argued October 31, 1975, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*John R. DeAngelis,* with him *Watzman, Leverson & Snyder,* for appellant.

*Robert L. Ceisler,* with him *Patrono, Ceisler, Edwards & Pettit,* for appellee.

OPINION BY JUDGE MENCER, January 13, 1976:

Appellant, Daniel Gabriel, was a teacher of German in the Trinity Area School District (District) for six years. By letter dated May 11, 1973, he was informed that he was being suspended for the following school year because of a decrease in the number of students taking instruction in German. This decrease resulted, in large part, from the removal of elective foreign language instruction in the eighth grade as part of a districtwide plan to incorporate the sixth, seventh, and eighth grades into a middle school. Appellant and a Mr. William Adams were the only German teachers in the District. Although appellant had one more year of seniority than Mr. Adams, the latter had a higher efficiency rating than appellant, based on rating worksheets adopted by the District.

Appellant requested, and was granted, a hearing before the Board of School Directors (Board) under the Local Agency Law[1] to protest his suspension. On July 10, 1973, the Board approved the suspension. An appeal was taken to the Court of Common Pleas of Washington County which refused appellant's request for a trial de novo. After argument confined to the record made before the Board, the Court dismissed the appeal by an order dated November 21, 1974. From that action the appellant takes his appeal before this Court, alleging that (1) curtailment of the German program could not be a valid reason for staff reduction since the curtailment was not approved as required by law, (2) the rating worksheets used by the District were not those required by law, and (3) the selection of a teacher to be suspended should have

---

1. Act of December 2, 1968, P. L. 1133, 53 P.S. §11301 et seq.

been based purely on seniority since there was no substantial difference between the ratings of appellant and Mr. Adams.

Our scope of review in these cases is limited by Section 8(b) of the Local Agency Law (53 P.S. §11308(b)). We are required to affirm the action of the local agency unless we find a violation of appellant's constitutional rights, an error of law or manifest abuse of discretion by the local agency, or that any necessary finding of fact made by the agency is not supported by substantial evidence. See *Hickey v. Board of School Directors of Penn Manor School District*, 16 Pa. Commonwealth Ct. 319, 328 A.2d 549 (1974) ; *Acitelli v. Westmont Hilltop School District*, 15 Pa. Commonwealth Ct. 214, 325 A.2d 490 (1974). This is a close case which raises important issues with regard to teacher suspensions under the Public School Code of 1949 (Code) ;[2] therefore, we will discuss each of appellant's objections in some detail.

## Curtailment of Program

A nondisciplinary suspension of a teacher, such as the one at issue in this case, can be made under Section 1124 of the Code (24 P.S. §11-1124) for four reasons, among them:

"(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction. . . ."

This is the section under which the Board seeks to suspend appellant. Appellant's contention is that the curtail-

---

2. Act of March 10, 1949, P. L. 30, *as amended*, 24 P.S. §1-101 et seq.

ment of the German program was not approved by the Department of Public Instruction (DPI) and that the decline in course enrollment was not "natural" but the result of the allegedly improper curtailment. We cannot agree. The Board specifically found, as its finding of fact No. 2, that the curriculum change to a middle school was approved by the Board and by DPI. This was based on uncontradicted testimony by Mr. Richard D. Bishop, Superintendent of Schools for the District. In addition, the applicable regulations (22 Pa. Code §5.62) specifically require an approval of the curriculum of a middle school:

"School districts shall submit a written request for approval to establish a middle school curriculum. Such request shall contain:

(1) a precise statement of the objectives of the school;

(2) a description of the characteristics of the children to be served by the school;

(3) a description of the curriculum to be offered which meets both the objectives and the needs of the children served by the school; and

(4) a plan for the evaluation of the curriculum at least biennially."

Assuming, as we must in the absence of evidence to the contrary, that the officials have acted with regularity, *Fox v. Pennsylvania Securities Commission,* 17 Pa. Commonwealth Ct. 72, 328 A.2d 573 (1974); *Wheatcroft v. Schmid,* 8 Pa. Commonwealth Ct. 1, 301 A.2d 377 (1973), we conclude that the requirement of approval has been satisfied. We do not believe, as appellant contends, that the elimination of German as an elective course in the eighth grade required separate approval by DPI. Accordingly, the Board's finding of fact No. 2 that "[t]he curriculum change was approved by the Trinity Area Board of School Directors and by the Pennsylvania Department of Public Instruction" is supported by substantial evidence, and the curtailment of the program was proper.

Rating Worksheets

Section 1125 of the Code (24 P.S. §11-1125) provides the approved method for making nondisciplinary suspensions. It reads in pertinent part:

"(a) Whenever a board of school directors decreases the size of the staff of professional employes, the suspensions to be made shall be determined by the district superintendent *on the basis of efficiency rank determined by ratings made in accordance with standards and regulations, determined by rating cards prepared by the Department of Public Instruction, as required by section one thousand one hundred twenty-three of this act.* It shall be the duty of boards of school directors to cause to be established a permanent record system, containing ratings for each professional employe employed within the district. Copies of all ratings for the year shall be transmitted to the professional employe upon his or her request, or, if any rating during the year is unsatisfactory, a copy of same shall be transmitted to the professional employe concerned. No professional employe shall be dismissed under this act unless such rating records have been kept on file by the board of school directors.

"(b) In cases in which suspensions are to be made, professional employes shall be retained on the basis of seniority rights, acquired within the school district of current employment, where no differences in rating are found. Seniority rights shall also prevail where there is no substantial difference in rating. In cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards." (Emphasis added.)

Section 1123 (24 P.S. §11-1123), in turn, provides in relevant portion:

"[T]he professional employe or temporary professional employe shall be rated by an approved rating system which shall give due consideration to personality, preparation, technique, and pupil reaction, *in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public Instruction,* and to be revised, from time to time, by the Department of Public Instruction with the cooperation and advice of a committee appointed by the Superintendent of Public Instruction. . . ." (Emphasis added.)

Appellant contends that the forms prepared by DPI, now known as DEBE-333 (5-72), are the only proper rating form unless DPI approves an alternative system. Since no such system had been approved for the District, appellant argues that suspension based on the Trinity system could not be valid. We disagree.

It is clear from both Section 1125(a) and Section 1123 that efficiency rank should be determined by ratings made *in accordance with standards and regulations determined by the rating cards.* We believe the rating sheets used by the District adequately meet these criteria.

The rating system used by the District differs from DEBE-333 only slightly. The same four main categories of evaluation—personality, preparation, technique, and pupil reaction—appear on both forms. Under each main category on both sheets there are several subcategories. The Trinity District worksheet adds a number of subcategories[3] which do not appear on DEBE-333. This presents us with little difficulty, however, since the official form itself contains blank spaces which, from their placement, seem reserved for the addition of relevant subcategories.

----

3. The subcategories added are: health, punctuality, proper use of teaching aids, motivation, and discipline. None of these subcategories is attacked by appellant as arbitrary or irrelevant.

The other major differences between DEBE-333 and the Trinity worksheet involve changes in the wording of subcategories. All told, there are some six changes in terminology.[4] Mr. Bishop testified that these changes involved merely an updating and clarification of terms rather than a change in meaning. We agree. Indeed, to find otherwise would effectively prevent a school district using a nonconforming rating sheet, no matter how slight the deviation from Form DEBE-333, from taking any personnel actions under Sections 1123 and 1125 of the Code. Where, as here, a school district's rating sheet differs only slightly from the card approved by DPI,[5] *and the same rating system has been used to evaluate all teachers in the district,* the twin goals of the teachers' tenure provisions of the Code to provide students with the highest possible quality of instructors and to safeguard teachers from arbitrary and capricious personnel action, are amply safeguarded. *See Johnson v. United School District Joint School Board,* 201 Pa. Superior Ct. 375, 191 A.2d 897 (1963).

---

4. These changes are summarized by the table below.

| DEBE-333 | | Trinity Worksheet |
|---|---|---|
| Physical characteristics | changed to | Appearance |
| Professional relationships | do. | Cooperation |
| Civic responsibility | do. | Teaching by good example |
| Appreciation and ideals | do. | Personal and social values |
| Classroom generalship | do. | Classroom management |
| Ability to compromise | do. | Ability to adjust |

5. A rating system differing more widely from the approved form than the one at issue in this case might, of course, be open to attack. Much litigation before the school boards, and especially before the courts, could be avoided in the future if school districts would either use prescribed forms or obtain written approval of alternate systems.

## Substantial Difference

Appellant's final argument is that the difference between his efficiency rating and that of Mr. Adams was not "substantial." Both DEBE-333 and the Trinity worksheet award up to 20 points for each of four main categories of evaluation: personality, preparation, technique, and pupil reaction. The score obtained is the unweighted rating. To this score is added one point for each year of service within the school district of current employment to a maximum of 20; the total is the weighted score.

A close reading of Section 1125 (b) reveals the procedure to be followed in determining the order of suspension. First, the unweighted scores of those under consideration must be compared; if no "substantial difference" appears, seniority rights prevail. If there are "substantial differences," the section provides that "seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards."

In the instant case, the appellant had an unweighted score of 45, Mr. Adams, 55.5, a difference of 10.5 points. The weighted scores were 51 for appellant and 60.5 for Mr. Adams, a difference of 9.5. Since the Board used the lower figure in its determination of "substantial difference," we will also consider that figure.

The term "substantial difference" is not defined in the Code nor, to our knowledge, has it been defined by the courts in this context. We must therefore look to the common usage meaning of the words. Statutory Construction Act of 1972, 1 Pa. C.S. §1903 (a). "Substantial" means "real," "considerable," or "important." *Webster's Third International Dictionary* (1966). We cannot find that a difference of 9.5 points here is an unreal, inconsiderable, or unimportant difference. We recognize, of course, that the final delineation of the limits of the term

"substantial difference" in the context of efficiency ratings must be done on a case-by-case basis.

Having considered appellant's objections, we must, nevertheless, affirm the order of the court below dismissing the appeal of Daniel Gabriel.

Order affirmed.