Babette Tressler, Marilyn Manley, Barbara Klotz and Gail Valentine, Appellants *v.* Upper Dublin School District, Appellee.

Argued April 6, 1977, before President Judge Bowman and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard W. Rogers,* with him *Rogers, King & Cole,* for appellants.

*Charles Potash,* Solicitor, with him, of counsel, *Wisler, Pearlstine, Talone, Craig & Garrity,* for appellee.

OPINION BY JUDGE WILKINSON, JR., May 19, 1977:

In this case we are again confronted with the problems inherent in the suspension and terminations of professional and temporary professional employes due to declining enrollment. One professional employe and three temporary professional employes contest their suspension and terminations, respectively, pursuant to Sections 1124 and 1125 of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§11-1124, 11-1125 (Code), by the Board of Directors of the Upper Dublin School District (Board). This suspension and these terminations were the result of resolutions adopted by the Board on April 29, 1975.[1] Sub-

---

[1] A total of eight persons were named in the resolutions, one professional employe and seven temporary professional employes.

sequently, appellants requested a hearing before the Board under the Local Agency Law, Act of December 2, 1968, P.L. 1133, 53 P.S. §11301. Hearings were held before the Board on the 10th and 15th of July 1975. A transcript was made of the hearings and both sides presented testimony. The Board adopted the findings of facts and conclusions of law presented by appellee which concluded that, a substantial decline in enrollment had occurred and that the suspensions and terminations were made in accordance with the code. Appellants next appealed to the Court of Common Pleas of Montgomery County,[2] which affirmed the order of the Board.[3] This appeal followed. We affirm.

Two primary issues present themselves for resolution on appeal. First, was there a substantial decline in pupil enrollment, supported by the record? Second, if there was a substantial decline in pupil enrollment, were the procedures followed in the selection of the professional employe and temporary professional employes proper and in accordance with the Code?

Our scope of review is limited by Section 8 of the Local Agency Law, 53 P.S. §11308, in that we must "affirm the action of the local agency unless we find a violation of appellant's constitutional rights, an

---

[2] This appeal procedure was specifically approved by our decisions in *Smith v. Board of School Directors of The Harmony Area School District*, 16 Pa. Commonwealth Ct. 175, 328 A.2d 883 (1974). *Accord, Phillippi v. School District of Springfield Township*, 28 Pa. Commonwealth Ct. 185, 367 A.2d 1133 (1977).

[3] Appellee attempted to raise the issue of mootness before the lower court by way of an Answer with New Matter. The New Matter stated that three of the four appellants (the one professional employe and two of the three temporary professional employes) had been reinstated. That was an inappropriate method by which to raise the issue of mootness. The issue of mootness is raised by a motion to dismiss for mootness. Pa. R.A.P. 1972. Had the issue been properly raised it appears that the case would have been moot.

error of law or manifest abuse of discretion by the local agency, or that any necessary finding of fact made by the agency is not supported by substantial evidence." (Citations omitted.) *Gabriel v. Trinity Area School District*, 22 Pa. Commonwealth Ct. 620, 623, 350 A.2d 203, 205 (1976).

Section 1124 provides, in pertinent part:

Any board of school directors may suspend the necessary number of professional employes for any of the causes hereinafter enumerated:

(1) Substantial decrease in pupil enrollment in the school district;

. . . .

Whether or not there is a decline in pupil enrollment, "is an area in which school boards must exercise discretion and board action will not be disturbed absent a showing that such discretion was abused, or that the action was arbitrary, based on a misconception of law or ignorance of facts." *Phillippi, supra.* Appellants contend that the evidence presented by appellee does not support a finding of substantial decline in pupil enrollment.[4] Appellants further contend: (1) that the enrollment figures presented by the school district, indicate an increase rather than a decrease; (2) even if one takes into account only the last three school years, the decrease indicated by the figures is not substantial; and (3) a court may not take into account projected enrollment figures. We disagree with all of

---

[4]

| School Year | Elementary Enrollment | Secondary Enrollment | Total Enrollment |
|---|---|---|---|
| 1969-70 | 2,743 | 2,358 | 5,101 |
| 1970-71 | 2,690 | 2,509 | 5,199 |
| 1971-72 | 2,667 | 2,671 | 5,338 |
| 1972-73 | 2,629 | 2,742 | 5,371 |
| 1973-74 | 2,514 | 2,770 | 5,284 |
| 1974-75 | 2,375 | 2,806 | 5,181 |
| 1975-76 | 2,189 projected | 2,814 projected | 5,003 projected |

these contentions. First, while it is true that calculations using the school year 1969-70 will result in a slight increase in total enrollment, the school district presented data from the school year 1969-70 to give the Board a better understanding of the trend of pupil enrollment. What is more important are the enrollment figures that show a steady decline in total enrollment beginning in the 1973-74 school year of almost 200 pupils (and almost twice that if the projections are used.) But perhaps the most significant data is the decline in the elementary school enrollment beginning in the 1972-73 school year which indicates a decrease of over 250 students in three years (over 475 students if the projections are used.) This is more important since this is where the vast majority of the terminations of temporary professionals took place. While longer periods of time and higher percentages will obviously be more convincing, we cannot say as a matter of law that this is not a substantial decline. *See Harmony, supra,* and *Phillippi, supra.* Nor, can we say there was no substantial evidence in the record to support such a finding. The evidence of decline in the Spanish and French Conversational Foreign Language Instruction is equally convincing.[5] With regard to the use of projections of enrollment, appellant cites *Crist v. Rayne Township School District,* 145 Pa. Su-

---

[5]

| School Year | Enrollment |
|---|---|
| 1969-1970 | 2,294 |
| 1970-1971 | 2,283 |
| 1971-1972 | 1,057 |
| 1972-1973 | 666 |
| 1973-1974 | 405 |
| 1974-1975 | 425 |
| 1975-1976 | 403 projected |

The decline in this area is due primarily to change in the elementary and junior high school conversational language curriculum in 1972. Appellants, however, do not contest the legality or propriety of such a curriculum change.

perior Ct. 438, 21 A.2d 417 (1941), for the proposition that projections may not be used. That case involved the closing of a one-room school house due to the small number of students in attendance and did not address the issue of whether projections may be used to determine enrollment. The use of projections is a necessary planning tool of school districts, the use of which we are loath to discourage. We need not reach this issue, however, since, we find there was substantial evidence before the Board to support their findings of fact and conclusions of law on the issue of substantial decline in enrollment.

Appellants argue next that the procedures followed in determining those persons to be suspended or terminated were contrary to the Code. Section 1125 of the Code, provides the procedure for suspending professional employes:

(a) Whenever a board of school directors decreases the size of the staff of professional employes, the suspensions to be made shall be determined by the district superintendent on the basis of efficiency rank determined by ratings made in accordance with standards and regulations, determined by rating cards prepared by the Department of Public Instruction, as required by section one thousand one hundred twenty-three of this act. It shall be the duty of boards of school directors to cause to be established a permanent record system, containing ratings for each professional employe employed within the district. . . .

(b) In cases in which suspensions are to be made, professional employes shall be retained on the basis of seniority rights, acquired within the school district of current employment, where no differences in rating are found. Seniority

rights shall also prevail where there is no substantial difference in rating. In cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards. . . .

(c) No suspended employe shall be prevented from engaging in other occupation during the period of such suspension. Suspended professional employes shall be reinstated in the inverse order of their suspension. No new appointment shall be made while there are suspended professional employes available, who are properly certified to fill such vacancies.

The procedure followed by the school district in determining the persons to be suspended or terminated was substantially as follows: During the 1974-75 school year planning began for the following year, and assessments were made of staffing requirements, the budget and pupil population. Realizing that pupil population was on the decline, the district pinpointed the areas in which the decline was the greatest, which were the elementary, special education, and language departments. The number of staff to be reduced in each area was then determined and in the elementary education department the reduction was found to be limited to the temporary professional employees. Then, a numerical rating was performed on all staff in the language and special education departments and all the temporary professionals in the elementary education department in April of 1975 (a separate list being made for each department).[6] The temporary pro-

---

[6] Appellants point out that the findings of the school district indicate all elementary education staff (professional and temporary professional) were rated numerically in April 1975. The

fessionals were gratuitously treated as if suspended, and accorded reinstatement rights as provided in Section 1125(c).

Our decision in *Phillippi, supra,* has simplified this issue immensely with regard to temporary professional employees. In *Phillippi, supra,* we found that temporary professionals are not entitled to the benefits of Sections 1124 and 1125 of the Code. Temporary professional employees are not suspended, their contracts are simply not renewed. By analogy to Section 1124 we reasoned in *Phillippi, supra,* that the contracts of temporary professionals may not be renewed if there is a substantial decrease in pupil enrollment, as we have here. Thus, without the benefit of Section 1125 temporary professionals have no right to be compared with professional employes on the basis of efficiency ratings nor for that matter among themselves. Further, the concept of realignment as expressed in *Welsko v. Foster Township School District,* 383 Pa. 390, 119 A.2d 43 (1956), is not applicable to temporary professional employes. *Phillippi, supra.* The Board in the instant case treated the temporary professionals with consummate fairness in determining to consider them as if suspended.

With regard to the one professional employe it is clear from the record that her selection as the person to be suspended was proper under the Code. The testimony indicates that after consideration of ratings and seniority, as well as areas of certification and realignment of staff, that this appellant was the correct

record, however, does not support such a finding. Our conclusion under *Phillippi, supra,* that temporary professional employes are not accorded the benefits of Section 1125, obviates the necessity for all staff to be rated since, temporary professionals have no right to be compared on the basis of efficiency ratings with professional employes.

choice for suspension.[7]  This appellant argues, however, that it was error for the Board to compare her efficiency ratings solely with her department. Rather, she contends that all the professional employes in the district should have been compared on the basis of efficiency ratings.  This point was raised in *Phillippi, supra,* and we dismissed it citing *Harmony, supra,* for the contention that the school district was not required to retain teachers in one area at the expense of not hiring teachers in another area.  In other words, to compare the efficiency ratings of all professional employes when declines in enrollment are localized, as they are here, and not across the board, would be fruitless.  Comparison, in that instance, of all professional employes in the district with different certifications in different areas together would accomplish nothing.  Even when realignment of staff is practicable so as to retain those with the most continuous years of service, *Welsko, supra,* comparison of all professional employes on the basis of efficiency ratings would be unnecessary.  It would be done on a department by department basis depending on the plan for realignment of staff.

Appellants argue further that the school district has violated the dictates of our Supreme Court in *Welsko, supra,* concerning realignment of staff.  We disagree.  We believe the record supports the fact that a realignment was considered and found to be impracticable.[8]  Moreover, similarly to the situation in *Harmony, supra,* appellants here have not shown that the Board did not make such an attempt nor have they shown that any realignment could have been accom-

---

[7] There were no temporary professional employes in the Spanish section of the language department.

[8] Appellants also contend that the common pleas court made additional findings of fact in violation of the limited scope of review allowed by Section 8 of the Local Agency Law, 53 P.S. §11308(b).  We find no basis for these contentions.

plished. We conclude that with regard to the one professional employe, the principles laid down by Sections 1124 and 1125 were followed completely.

Accordingly, we will enter the following

ORDER

Now, May 19, 1977, the order of the Court of Common Pleas of Montgomery County, No. 75-15383, dated April 5, 1976, affirming the action of the Board of Directors of the Upper Dublin School District in suspending Babette Tressler, Marilyn Manley, Barbara Klotz and Gail Valentine, is affirmed.