David B. Smith, Appellant *v.* Richland School District, Appellee.

Argued May 4, 1978, before Judges MENCER, ROGERS and DiSALLE, sitting as a panel of three.

*William K. Eckel,* for appellant.

*Samuel F. Rizzo,* with him *Kraft and Rizzo,* for appellee.

OPINION BY JUDGE DISALLE, June 19, 1978:

David B. Smith (Appellant) appeals from the Order of the Court of Common Pleas of Cambria County, dated. May 23, 1977, denying and dismissing his appeal from the adjudication of the Richland School District (School District) which suspended Appellant pursuant to Sections 1124 and 1125 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§11-1124 and 11-1125.[1]

---

[1] Section 1124 provides:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) Substantial decrease in pupil enrollment in the school district;

(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

(3) Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes;

Appellant, a tenured professional employe of the School District, acknowledges that a decline in course enrollment necessitated the suspension of one Spanish teacher. It is his contention, however, that he was not the one to be suspended since a proper application of Section 1125 would have mandated the suspension of one Barbara Berkebile. Specifically, he challenges the School District's Finding of Fact that there was and presently is a substantial difference in his ratings and the ratings of the next lowest professional employe, Ms. Berkebile.

Section 1125 establishes the procedure for suspending professional employes when a decrease in staff is necessary:

(a) Whenever a board of school directors decreases the size of the staff of professional employes, the suspensions to be made shall be determined by the the [sic] district superintendent on the basis of efficiency rank determined by ratings made in accordance with standards and regulations, determined by rating cards prepared by the Department of Public Instruction, as required by section one thousand one hundred twenty-three of this act. It shall be the duty of boards of school directors to cause to be established a permanent record system, containing ratings for each professional employe employed within the district. . . .

(b) In cases in which suspensions are to be made, professional employes shall be retained on the basis of seniority rights, acquired

---

(4) When new school districts are established as the result of reorganization of school districts pursuant to Article II, subdivision (i) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes.

within the school district of current employment, where no differences in rating are found. Seniority rights shall also prevail where there is no substantial difference in rating. In cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards. . . .

(c) No suspended employe shall be prevented from engaging· in other occupation during the period of such suspension. Suspended professional employes shall be reinstated in the inverse order of their suspension. No new appointment shall be made while there are suspended professional employes available, who are properly certified to fill such vacancies.

It is difficult to apply the statutory procedure to the facts of this case since the School District failed to set forth in its adjudication the numerical bases for concluding that the rating of Appellant was substantially different from that of Ms. Berkebile. Nevertheless, in the hearing afforded Appellant pursuant to Section 4 of the Local Agency Law, Act of December 2, 1968, P.L. 1133, *as amended*, 53 P.S. §11304, extensive testimony was presented by the School District as to both the specific ratings of the teachers and how these ratings were established.

The School District followed the forms prepared by the Department of Public Instruction, known as DEBE-333(5-72), for rating its professional employes. The four enumerated areas in which teachers are rated include personality, preparation, technique, and pupil reaction. A maximum of twenty points may be awarded in each category. Based on these criteria, for the school year 1974-1975, Appellant received an unweighted rating of 73 and Ms. Berkebile received

an unweighted rating of 79. When seniority was added to these unweighted ratings Appellant and Ms. Berkebile received weighted ratings of 81 and 83 respectively. This reflected Appellant's eight year, and Ms. Berkebile's four year, employment by the School District. The Superintendent of Schools testified that totaling the unweighted scores over the previous four year period resulted in a rating of 275 for Appellant and 312 for Ms. Berkebile. We consider these latter figures as merely cumulative evidence which is not essential to the ultimate resolution of whether Appellant or Ms. Berkebile was the proper professional employe to be suspended. The ratings, both weighted and unweighted, for the school year immediately prior to that in which the reductions in professional employe staff are to be effectuated are the most accurate indicia of teacher efficiency and should be the sole factors considered in determining necessary suspensions under Section 1124.

Using the ratings for the school year 1974-1975, therefore, Appellant argues that the difference between his efficiency rating and that of Ms. Berkebile was not substantial. While the final delineation of the term "substantial difference" in the context of efficiency ratings must be done on a case-by-case basis, we have previously construed this term to mean a real, considerable or important difference. *Gabriel v. Trinity Area School District*, 22 Pa. Commonwealth Ct. 620, 350 A.2d 203 (1976).

The procedure to be followed in determining the order of suspension under Section 1125 was set forth in *Gabriel v. Trinity Area School District, supra,* as follows: "First, the unweighted scores of those under consideration must be compared; if no 'substantial difference' appears, seniority rights prevail. If there are 'substantial differences,' the section provides that 'seniority shall be given consideration in accordance

with principles and standards of weighting incorporated in the rating cards.' " 22 Pa. Commonwealth Ct. at 628, 350 A.2d at 207. In the present case, Appellant has an unweighted score of 73, Ms. Berkebile of 79, a difference of six points. The School District apparently felt, based on the testimony of the Superintendent of Schools, that this difference was substantial. The weighted scores, as we have previously mentioned, were 81 for Appellant and 83 for Ms. Berkebile. Since Appellant's rating was the lower of the two, he was determined to be the professional employe to be suspended. We agree with this result and conclude that a difference of six points in the unweighted ratings of these two teachers was not an unreal, inconsiderable or unimportant difference.

Appellant argues, however, that after a substantial difference in the unweighted ratings is found, seniority years should be added, and a second determination of substantial difference should be made between the weighted ratings. Since it was conceded that no substantial difference exists between the weighted ratings, Appellant contends he should have been retained as he had the greater seniority rights. This argument is without merit. Section 1125 requires only the initial determination of substantial difference. To require a second determination of substantial difference would effectively eliminate any rational and objective method of deciding which teacher should be suspended. In our view the "substantial difference" test should be applied only to the unweighted scores. Once this has been determined, if the weighting process still results in a lower score, it is the person who has the lower score who must be suspended whether the weighted difference is substantial or not.

Appellant advances two additional arguments which we shall briefly consider. First, Appellant con-

tends that the adjudication by the School District was violative of his constitutional rights in that there was an impermissible commingling of the prosecutorial and adjudicatory functions of the school board solicitor. The exact basis for Appellant's contention is unclear. The school board solicitor presented the prosecution of the school board case and the school board president acted as the presiding officer. There are no allegations that the solicitor advised the presiding officer or made evidentiary rulings during the hearing, or that he assisted in the preparation of the adjudication. The two cases relied on by Appellant in support of his ambiguous claim, *English v. North East Board of Education*, 22 Pa. Commonwealth Ct. 240, 348 A.2d 494 (1975), and *Appeal of Feldman*, 21 Pa. Commonwealth Ct. 451, 346 A.2d 895 (1975), are factually inapposite. Our review of the record reveals no such procedural defect. Consequently, we find no due process violation to have occurred.

Finally, Appellant challenges the effective date of his suspension. The School District adjudged that the suspension commence from June 18, 1975, the date of the original suspension. Appellant contends that the effective date should be September 17, 1975, the date of the adjudication. We conclude that the June 18, 1975, date was correct. Sections 1124 and 1125 do not require that a hearing be held prior to a valid suspension. Rather, Section 4 of the Local Agency Law provides that the employe must be afforded an opportunity for a hearing if he so requests. If no hearing is requested by the employe, the date of the original suspension controls. To determine that the date of adjudication be the effective date of suspension would create a confusing and anomalous situation where, for example, several professional employes were suspended, but only one requested a hearing. In order to prevent this potential inconsistency in dates

of suspension, we hold that the date of the original suspension, and not the date of adjudication, is to be regarded as controlling.

Section 8 of the Local Agency Law, 53 P.S. §11308, limits our scope of review in cases of this kind. *Tressler v. Upper Dublin School District*, 30 Pa. Commonwealth Ct. 171, 373 A.2d 755 (1977). We find no violation of Appellant's constitutional rights, no error of law, no manifest abuse of discretion by the local agency, nor that any necessary finding of fact was not supported by substantial evidence. Accordingly, we affirm.

#### ORDER

AND Now, this 19th day of June, 1978, the order of the Court of Common Pleas of Cambria County, dated May 23, 1977, is hereby affirmed.