Sto-Rox School District, Appellant *v.* Sandra L. Horgan et al., Appellees.

Sandra L. Horgan et al., Appellants *v.* Sto-Rox School District, Appellee.

Argued October 7, 1981, before President Judge CRUMLISH and Judges ROGERS and BLATT, sitting as a panel of three.

*Larry P. Gaitens, Larry P. Gaitens, P.C.,* for appellant, Sto-Rox School District.

*Ronald N. Watzman, Watzman & Elovitz,* for appellees, Sandra L. Horgan et al.

*William Fearen,* with him *Michael I. Levin, Cleckner and Fearen,* for Amicus Curiae, Pennsylvania School Boards Association.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., August 26, 1982:

Sixteen professional employes (teachers) from the Sto-Rox School District appeal an Allegheny County Common Pleas Court order which affirmed in part and reversed in part a School Board Adjudication suspending them for the 1978-1979 school year. The School District cross-appealed and both appeals were consolidated for argument. We affirm in part and reverse and remand in part.

On June 23, 1978, a School Board resolution called for the suspension of 16 secondary teachers from the Sto-Rox School District. The teachers requested a hearing before the Board pursuant to Section 4 of the Local Agency Law;[1] these hearings were held on February 3, June 30, and October 17, 1979. The Board issued its Adjudication on July 29, 1980, concluding that, due to a substantial decline in student enrollment, suspension of the professional employes was necessary under Article XI, Section 1224 of the Public School Code of 1949.[2] The Board, then concluding that the suspension of these teachers on the basis of seniority was appropriate, sustained the suspensions.

---

[1] Act of December 2, 1968, P.L. 1133, *formerly,* 53 P.S. §11304, repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1429]. A similar section is found at 2 Pa. C.S.A. §553.

[2] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1124.

Both parties assert error in the lower court's disposition of the appeal. Section 8 of the Local Agency Law[3] limits our scope of review, requiring us to affirm the Board and the court below unless we find a violation of constitutional rights, an error of law or manifest abuse of discretion, or that a necessary finding of fact is not supported by substantial evidence. *Gabriel v. Trinity School District,* 22 Pa. Commonwealth Ct. 620, 350 A.2d 203 (1976).

The teachers contend that the adjudication before the Board violated their constitutional right to due process of law since they were afforded no pre-determination hearing and the post-suspension hearings were unduly delayed.

In support of their position for a predetermination hearing, the teachers cite two federal cases: *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3rd Cir. 1974) and *Ashlie v. Chester-Upland School District,* No. 78-4037 (E.D. Pa. May 9, 1979). In *Skehan,* the Third Circuit held that a hearing after the *termination* of a nontenured college professor is not the due process equivalent of the predetermination hearing required by case law.[4]

---

[3] Act of December 2, 1968, P.L. 1133, *formerly,* 53 P.S. 11308, repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1429]. A similar section is found at 2 Pa. C.S.A. §754.

[4] Despite the lengthy procedural posture, as set out below, this holding was affirmed throughout:

*Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3d Cir. 1974), *vacated and remanded,* 421 U.S. 983 (1975), *on remand,* 538 F.2d 53 (3d Cir. 1976), *cert. denied,* 429 U.S. 979 (1976), *on remand,* 431 F. Supp. 1379 (M.D. Pa. 1977). Further proceedings on the issue of relief: 436 F. Supp. 657 (M.D. Pa. 1977), *aff'd in part, remanded in part,* 590 F.2d 470 (3d Cir. 1978), *cert. denied,* 44 U.S. 832 (1979), *on remand,* 501 F. Supp. 1360 (M.D. Pa. 1980).

*Skehan,* 501 F.2d at 38. (Emphasis added.) In *Ashlie,* the District Court for the Eastern District of Pennsylvania held as unconstitutional the Pennsylvania Local Agency Law permitting the *dismissal* of a public school teacher without the benefit of a predetermination hearing.[5] *Ashlie,* No. 78-4037 (E.D. Pa. May 9, 1979), slip op. at 4. (Emphasis added.) Both cases, however, are distinguishable from the case at bar since each involved the dismissal, not the suspension, of a teacher.[6]

In *Smith v. Richland School District,* 36 Pa. Commonwealth Ct. 150, 156, 387 A.2d 974, 977 (1978), we held that "Sections 1124 and 1125 [of the Public School Code of 1949] do not require that a hearing

---

[5] Judge VAN ARTSDALEN, who wrote the opinion in *Ashlie,* stated at n. 2 that he reached his conclusion "primarily under the compulsion of *Skehan*" and that, had this been a case of first impression, he might have found that the public interest in the efficient identification and removal of immoral and incompetent school teachers, see n. 6, *infra,* outweighs the individual's interest in not being arbitrarily deprived of a probationary or temporary teaching position, and that a post-termination hearing would suffice. *See Arnett v. Kennedy,* 416 U.S. 134 (1974).

[6] In *Skehan,* a college professor was terminated during his contract term on the grounds that he failed to fulfill his "classroom obligations" and had "flagrantly, willfully, and maliciously disrupted the instructional program." He was notified in writing of those charges by the President of the College on October 9, 1970, and given an opportunity to respond in writing within five days. On October 23rd, the Trustees terminated his employment effective October 17th. On December 1, 1970, the Committee on Academic Affairs was convened to hold a hearing concerning the dismissal.

In *Ashlie,* a temporary professional employe was dismissed following a sex change operation and a subsequent change of name. A letter from the School Board cited the reasons for her dismissal: "Incompetency, immorality, and other conduct or improper conduct which is potentially psychologically damaging to students." The letter emphasized Ashlie's right to a hearing, which she did request.

be held prior to a valid suspension.'' Section 4 of the Local Agency Law requires a party to be afforded reasonable notice of a hearing and an opportunity to be heard before any adjudication of a local agency is valid. An ''adjudication'' is defined as ''[a]ny final order, decree, determination or ruling by an agency.'' 2 Pa. C. S. §101. The School Board resolution of June 23, 1978, was not a final determination; the teachers were afforded an opportunity to be heard before a final adjudication from the Board. This appeal procedure has been specifically approved of by recent case law. *See Tressler v. Upper Dublin School District,* 30 Pa. Commonwealth Ct. 171, 173 n. 2, 373 A.2d 755, 757 n. 2 (1977).

The teachers next contend that they are entitled to back pay from the date of the suspension to the date of the final adjudication by the Board. In support of this contention, the teachers cite *McKelvey v. Colonial School District,* 22 Pa. Commonwealth Ct. 207, 348 A.2d 445 (1975), and argue that requiring a School District to pay teachers from date of suspension to date of final adjudication would be an incentive for the Board to expeditiously adjudicate the suspensions, thereby preserving the teachers' right to a timely appeal.[7] Both arguments are without merit. *McKelvey* is clearly distinguishable in that it involved the dismissal of a temporary professional employe who, after requesting a hearing, was denied one by the School Board. This is not the situation here. Furthermore, the lower court held, and we agree, that the delay from June 23, 1978 (date of suspension), until February 3, 1979 (date of first hearing), is not per se violative of the teachers' constitutional rights. Sixteen teachers from five departments were involved in the suspensions. The record fails to support

---

[7] Appellants-teachers brief at page 12.

any allegation of a deliberate or unreasonable delay. Thus, we hold that the delay from Board Resolution to Board Adjudication does not violate the teachers' due process of law.

The teachers next contend that the lower court erred by basing its decision, in part, on the amended Section 1125 of the Public School Code of 1949[8] instead of the former Section 1125,[9] which was the applicable law at the time of the suspensions. We agree.

The amended Section 1125 provides:

11-1125.1 Persons to be suspended

(a) Professional employes shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment.
. . .

This section, establishing seniority as the only criteria for the order of teacher suspensions, became law on November 20, 1979. It amended Section 1125(b) of the School Code, which provided:

11-1125. Suspensions and reinstatements; how made

. . .

(b) In cases in which suspensions are to be made, professional employes shall be retained on the basis of seniority rights, acquired within the school district of current employment, where no differences in rating are found. Seniority rights shall also prevail where there is no substantial difference in rat-

8 Section 1125.1, Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, added by Section 3 of the Act of November 20, 1979, P.L. 465, *formerly*, 24 P.S. §11-1125(b).

9 Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1125 (b).

ing. In cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards. . . .

This section uses seniority and ratings as the basis for the order of suspensions when there is a substantial difference in ratings.

The amended section, while effective at the time of the Board's final adjudication on July 29, 1980, was not in effect at the time of the Board's Resolution to suspend the teachers on June 23, 1978. In teacher suspension cases, where the date of suspension and the date of final adjudication do not occur *eo die*, "the date of the original suspension, and not the date of adjudication, is to be regarded as controlling." *Smith v. Richland School District* at 157, 387 A.2d at 977. Accordingly, June 23, 1978, is the controlling date; since the amended section was not effective until November 29, 1979, the former section, §1125(b), contains the applicable law and the lower court erred by using the amended section.[10]

The lower court properly concluded that there was a decline in enrollment to justify teacher suspensions. Once this is established, a determination of whether or not there is a substantial difference in ratings must be made. *Gabriel v. Trinity Area School District,* at 628, 350 A.2d at 207, sets forth this procedure:

---

[10] Section 3 of the Statutory Construction Act of 1972, 1 Pa. C.S.A. §1926, provides that:
No statute shall construed [sic] to be retroactive unless clearly and manifestly so intended by the General Assembly.
The amended section, §1125.1, is void of any such intent. *See Gehris v. Department of Transportation,* 471 Pa. 210, 369 A.2d 1271 (1977).

First, the *unweighted* score[11] of those under consideration must be compared; if no "substantial difference" appears, seniority rights prevail. If there are "substantial differences," the section [11-1125(b)] provides that "seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards." (Emphasis added.)

The testimony of Theodore Telep, School Superintendent, indicates that this procedure was not followed. Instead, Mr. Telep stated that the *weighted* scores were considered first and then, finding no substantial difference, the suspensions were based on seniority alone.[12] The Court rejected the use of this very procedure in *Smith v. Richland School District* at 155, 387 A.2d at 977, and concluded that the "substantial difference" test should be applied only to *unweighted scores*.

We hold that the former Section 1125(b), 24 P.S. §11-1125(b), was the applicable law in this case and reverse and remand for a determination of the order of suspension pursuant thereto.

The teachers next contend that the lower court abused its discretion by considering the Collective Bargaining Agreement which was never introduced into evidence during the School Board hearings. We agree.

Judicial review of a local agency is limited by Section 8 of the Local Agency Law,[13] which provides:

. . .

---

[11] *Unweighted scores* are comprised of the teacher's rating score alone while *weighted scores* are a combination of both the teacher's rating score and seniority.

[12] *See* the testimony of Theodore Telep. R. at 115-120.

[13] *See* n. 3, *supra*.

§754. Disposition of appeal.

(b) Complete record.—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa. C. S. §706 (relating to disposition of appeals).

A complete record of the proceedings before the School Board was made, which included the transcripts from the three hearings and various exhibits. The lower court, even though stating its proper scope of review,[14] based its decision, in part, on the Collective Bargaining Agreement. Thus, by taking additional evidence by considering the Collective Bargaining Agreement, it acted clearly outside its statutorily defined scope of review. *See Springfield School District v. Shellem,* 16 Pa. Commonwealth Ct.

---

[14] In its decision, the lower court wrote:

No additional evidence has been taken by this Court and review will be limited to a determination of whether the adjudication was in violation of the constitutional rights of appellants, was not in accordance with the law, or any finding of fact made by the Board and necessary to support its adjudication was not supported by substantial evidence. (Citations omitted.)

306, 312-13, 328 A.2d 535, 538 (1974); *In re: Appeal of Gettler,* 42 Pa. Commonwealth Ct. 415, 400 A.2d 1339 (1979).

We reverse the lower court and remand for a disposition of the appeal within the proper scope of review pursuant to 2 Pa. C.S.A. §754(b).[15]

The Sto-Rox School District appeals the lower court's *sua sponte* act of reinstating, with back pay, 11 of the suspended teachers. The court held that it was improper for the School Board to suspend only secondary school teachers when many elementary school teachers had less seniority than those suspended. We reverse and remand.

The lower court erred by holding that Section 1125.1(a) and the Collective Bargaining Agreement[16] "require that if sixteen teachers are to be suspended, then the sixteen teachers last hired by the Board must be suspended."[17] The School District maintains, and we agree, that it is not required to compare seniority and ratings of professional employes in such disparate areas as the elementary and secondary educational systems. In *Smith v. Harmony Area School District,* 16 Pa. Commonwealth Ct. 175, 178, 328 A.2d 883, 885 (1974), the Court held that "[t]he law does not require a school district to retain unneeded teachers in one area of education at the expense of not hiring needed teachers in another area." We stated further that:

> Comparison . . . of all professional employes in the district with different certifications in

---

[15] The teachers attack the validity of the Collective Bargaining Agreement, arguing that it is totally inconsistent with the Public School Code of 1949. Since we have held that consideration of this Agreement by the lower court was improper, it is unnecessary to address this argument.

[16] Both provision were improperly applied by the lower court.

[17] R. at 211.

different areas together would accomplish nothing. Even when realignment of staff is practicable so as to retain those with the most continuous years of service, Welsko, supra, comparisons of all professional employes on the basis of efficiency ratings would be unnecessary. It would be done on a department by department basis depending on the plan for realignment of staff.

*Tressler v. Upper Dublin School District* at 179, 373 A.2d at 759 (1977). It is obvious that, if suspensions can be confined to different departments within the District's secondary school system, they can be confined to the secondary school system itself.

The Public School Code of 1949 does not require a School District to compare the ratings and seniority of all professional employes in both the elementary and secondary school systems when determining the order of suspensions resulting from a decline in student enrollment.[18]

We affirm the lower court's decision as to the due process issues and reverse as to its use of the amended section of 24 P.S. §11-1125, its use of the Collective Bargaining Agreement, and its use of the "substantial difference" test with weighted scores instead of unweighted scores. We remand for proceedings consistent with our opinion.

## ORDER

The Allegheny County Common Pleas Court order, No. SA 905 of 1980 dated February 19, 1981, is hereby reversed and remanded for proceedings not inconsistent with this opinion.

---

[18] We also note that, while there was a decline in student enrollment in the elementary school system, suspensions of elementary school teachers had occurred in prior years. R. at 40-44.

Judges MENCER and PALLADINO did not participate in the decision in this case.