511 A.2d 900

Paul James, Appellant *v.* Big Beaver Falls Area School District, Appellee.

Argued February 5, 1986, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, DOYLE, BARRY, COLINS and PALLADINO.

*William J. Maikovich,* for appellant.

*Samuel J. Orr, III,* for appellee.

Opinion by Judge Doyle, June 23, 1986:

This is an appeal by Paul James from an order of the Court of Common Pleas of Beaver County which affirmed a determination of the Big Beaver Falls Area School District (District) holding that James' suspension because of declining enrollment pursuant to Section 1125.1 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* (School Code) 24 P.S. §11-1125.1, was valid.[1]

The relevant facts are not in dispute. James is a professional employee with the District and is certified to teach only Social Studies. Paulette Potter, who is black, is a professional employee with the District and is certified in Social Studies, Spanish and Elementary Education. James is senior to Potter who is in turn senior to at least one elementary school teacher who was not suspended. At the time relevant to this appeal Potter was teaching four classes of Spanish and two classes of Black Studies, a course which she developed. Robert Blythe is also a professional employee with the District and is certified to teach Social Studies. Blythe served twenty-

---

[1] Section 1125.1 which was added by Section 3 of the Act of November 20, 1979, P.L. 465, provides in pertinent part:

(a) Professional employes shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment. Approved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue to accrue during suspension and all approved leaves of absence.

. . .

(c) A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes.

one months in the armed services (March 1965 through January 1967) including approximately a one year tour of duty in Vietnam and was honorably discharged. Blythe and James are equal in seniority within the District. Under the relevant collective bargaining agreement where a suspension under Section 1125.1 is necessary and employees are of equal seniority, lots are to be drawn. In the instant case with respect to Blythe and James lots were drawn and James was determined to be the more senior employee. The District, however, pursuant to Section 7107 of what is commonly known as the Veterans' Preference Act (Act), 51 Pa. C. S. §7107, awarded Blythe twenty-one months seniority for his time in the military and hence suspended James.[2]

James argued below and now argues as well two alternative theories in which he asserts that the District improperly determined that he should be the employee suspended.[3] With respect to Blythe, James contends that application of Section 7107 of the Act to Section 1125.1 of the School Code is improper. It is undisputed that had Blythe not been given seniority credit for his

---

[2] Section 7107 of the Act provides:
Whenever a reduction in force is necessary in any public position, or on public works of the Commonwealth and its political subdivisions, and personnel are discharged according to seniority, the number of years of service of any soldier shall be determined by adding his total years of service in the civil service or on public works to his total years of service as a member of the armed forces of the United States, or in any women's organization officially connected therewith during any war in which the United States engaged.

[3] Our scope of review is limited to determining whether there has been a constitutional violation or an error of law and whether the findings of fact are supported by substantial evidence. *Platko v. Laurel Highlands School District*, 49 Pa. Commonwealth Ct. 210, 410 A.2d 960 (1980).

military service, James, who won the lottery, would be deemed the more senior necessitating the suspension of Blythe rather than James. We have already decided the question of the applicability of the Act to Section 1125.1 of the School Code in *Northeastern Educational Intermediate Unit No. 19 v. Stephens,* 98 Pa. Commonwealth Ct. 127, 510 A.2d 1267 (1986) *(NEIU)* considering there all of the statutory construction, constitutional, and public policy arguments raised here. We held in *NEIU* that Section 7107 of the Act is properly applied to Section 1125.1 of the School Code for purposes of computing seniority and that such application is constitutional. *NEIU* controls the result here.

With respect to Potter, James asserts that because he is senior to her and because she teaches two classes of Social Studies for which he, too, is certified he should have been reassigned to teach those two classes.[4] We must reject this contention. While it is true that suspension under Section 1125.1 is premised only upon seniority, we held in *Godfrey v. Penns Valley School District,* 22 Pa. D. & C. 3rd 466 (1981) *affirmed on the opinion of the trial court* at 68 Pa. Commonwealth Ct. 166, 449 A.2d 765 (1982), *that in instances involving employees with multiple certification,* and the resultant checkerboarding of professional staff from one department to another, the practicalities of such realignment is a valid district consideration.[5] In *Godfrey* the appel-

---

[4] We note that Section 1125.1 requires realignment to "positions." Whether two classes out of six constitute a position was an issue that the trial court declined to reach. We are unable to reach it because it was not raised on appeal.

[5] For cases decided under former Section 1125, which Section was devoid of an express mandate to realign with seniority as the controlling factor, *see Platko; Tressler v. Upper Dublin School District,* 30 Pa. Commonwealth Ct. 171, 373 A.2d 755 (1977); *Smith v. Harmony Area School District,* 16 Pa. Commonwealth Ct. 175, 328 A.2d 883 (1974). These cases also allow the districts to consider the practicality of realignment.

lant, who was certified to teach only music, sought to bump a more senior teacher possessing dual certification maintaining that that teacher could then teach in his other area of certification, which would entail the suspension of a third teacher who had *less* seniority than the complaining teacher. We rejected Godfrey's contention because Godfrey sought to displace the other (third) teacher not on the basis of strict seniority within the area of music certification, but on the basis of the other (second) teacher's certification to teach another subject—a credential Godfrey and other (third) teacher did not share.

More recently, in *Gibbons v. New Castle Area School District,* 93 Pa. Commonwealth Ct. 28, 500 A.2d 922 (1985), we recognized that realignment under Section 1125.1 must be based solely on seniority. In *Gibbons* the trial court affirmed the school board's decision to realign Gibbons from his position as a junior high school principal to the position of senior high school assistant principal. The specific facts as related in *Gibbons* were as follows:

> In June of 1982, the board closed George Washington Junior High School (Washington), one of the two junior highs in the district at that time; the board transferred the seventh and eighth grade students from Washington to Franklin and the ninth grade students to [New Castle] Senior High. The board's decision to close Washington required a realignment of the secondary school administrators involving the abolition of two secondary administrator's positions. Consequently, the board returned the two least senior secondary administrators to the classroom as teachers, and assigned the two most senior administrators, who had been the principal and assistant principal of Washington, to Franklin as its

principal and assistant principal. [Gibbons], who was the third most senior secondary school administrator, and who had previously been principal of Franklin, was appointed assistant principal of [New Castle] Senior High. The board retained Frank Dattilo, who ranked fifth on the seniority list for secondary school administrators, in his position as principal of the Senior High.

*Id.* at 30, 500 A.2d at 923. Although the school district maintained that it believed that senior high school administrative experience made Dattilo a better choice than Gibbons, we, in reversing the trial court, rejected the notion that the district had discretion in such matters noting that Section 1125.1, unlike former Section 1125, mandates strict seniority. *Gibbons* did *not* involve multiple certifications and distinguished *Godfrey,* noting that in *Godfrey* "there was no basis for mandating an alternative realignment . . . because the complaining teacher's certification was different from that of the individual whose displacement he sought through the realignment process." *Gibbons*, 93 Pa. Commonwealth Ct. at 37, 38, 500 A.2d at 926. Thus *Gibbons* recognized that in situations like *Godfrey* where the complaining teacher seeks to displace another teacher on the basis of the other's certification in an area not shared by the complaining teacher, the Section 1125.1 provision of mandatory realignment based upon blind adherence to seniority only is not required.

In the *Gibbons* case the Court specifically noted that both Gibbons and the teacher he sought to displace possessed "qualifications officially certified to be equal." *Id.* at 38, 500 A.2d at 927. In the instant case, unlike in *Gibbons,* the complaining teacher (James) attempts to use Potter's Spanish certification, a credential he does not share with her, as a basis for displacing her. Thus

this situation is more akin to *Godfrey* and accordingly, the strict seniority requirements of Section 1125.1 do not come into play and the District may consider the practicalities of realignment. *Cf. Gibbons; Godfrey.*

When such practicalities are considered, we note that Potter not only has multiple certification but also is actually teaching in more than one area of her certification. James is not certified in multiple areas. Thus if he displaces Potter he can do so only for two of her classes. And if, as James asserts, Potter can be reassigned to teach Elementary Education full-time[6] another individual must be found to teach her four classes of Spanish. The result of this would be not a domino effect, where each employee bumps a less senior one, but a snowballing effect where the bump of Potter requires realignment of two other employees just to accommodate her position. For the District to conclude that such practices would be impractical is certainly understandable. If instead, Potter retained her four classes of Spanish (which is unlikely because she is the least senior Spanish teacher) either two other classes would have to be found to complete her load, perhaps necessitating further bumping in the Social Studies area, or in the alternative James would be employed for one-quarter of each day and Potter for three-quarters of each day. Finally, if Potter is suspended from her four Spanish classes and a more senior teacher (James) is realigned to teach her Black Studies classes, then we again have a snowball effect where two teachers are realigned to Potter's position, one to teach Black Studies (James) and one to teach Spanish. Again the impracticalities of assessing in detail these multiple alternatives, especially on a district-wide basis, is evident.

---

[6] We are inclined to agree with the trial court that Section 1125.1 does not require realignment from secondary to elementary education. *See Sto-Rox School District v. Horgan,* 68 Pa. Commonwealth Ct. 416, 426, 449 A.2d 796, 801 (1982).

James also asserts that the District denied him the right to teach the two Black Studies classes because he is white. Had the District done so a constitutional violation would be evident. But, in truth, this is not what occurred. Testimony established that Potter had developed the Black Studies courses and was the most knowledgable in the subject area. Additionally, there had been a period when two teachers other than Potter were teaching the courses. During that period enrollment in the courses dropped. We believe this factor could be validly considered by the District in determining the propriety of alignment. Another factor which is properly considered by a district in assessing the practicality of whether to align a given teacher is the fact that the teacher designed a particular course. *Godfrey,* 22 Pa. D. & C. 3rd at 472. Thus, based upon the facts that Potter developed the course and that it enjoyed its highest levels of popularity when she taught it we cannot say that the District erred in concluding that replacement of Potter with another employee, in this case James who happens to be white, would have been disruptive to ongoing educational programs and educationally unsound. As the trial court aptly noted, "the District's motivation was to prevent the disruption of an ongoing educational program and had nothing to do with race. If race was a factor, it was only a factor to the students and not to the District."

Having determined that the procedures below were not in violation of Section 1125.1 of the School Code and having further determined that no constitutional infirmity exists, we affirm the order of the trial court.

ORDER

NOW, June 23, 1986, the order of the Court of Common Pleas of Beaver County, No. 437 of 1985 dated September 9, 1985 is hereby affirmed.

DISSENTING OPINION BY JUDGE COLINS:

I dissent.

The area of certification at issue is Social Studies. There is no separate certification in the area of Black Studies. Appellant is the more senior teacher in this certification and, therefore, should not be suspended. While the rationale of the majority may be salutary, it is clear that Section 1125.1 mandates that suspensions be premised solely upon seniority. It is for the legislature, not the courts, to amend this statute, if necessary.