## Commonwealth v. Gryctko

*Musser W. Gettig*, for Commonwealth; *Edw. J. Thompson*, for defendant.

FLEMING, P. J., February 23, 1935.—This is an appeal under the provisions of section 616 of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, sec 2, from the action of the Secretary of

Revenue of the Commonwealth of Pennsylvania, in suspending the operator's license of Ben. J. Gryctko, Jr. Briefly stated, the facts are that Gryctko was arrested for a violation of section 1001(a) of the code, providing against reckless driving. A hearing was waived, and when the case came on to be heard in the court of quarter sessions, the said Gryctko was discharged for lack of evidence and the costs directed to be paid by the county. Subsequently the Secretary of Revenue, through an agent or inspector, caused a further hearing to be had under the provisions of section 615(b)2 of the code, as amended by the Act of 1931, found Gryctko guilty, and suspended his operating privileges.

We are inclined to agree with the contention of the appellant that section 615(b)2 is unconstitutional as offending against both the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

The fourteenth amendment to the Constitution of the United States, in secion 1 thereof, provides as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In Allgeyer v. Louisiana, 165 U. S. 578, 589, is was said: " The liberty mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned."

In Raymond v. Chicago Traction Co., 207 U. S. 20, the court said that the fourteenth amendment is not confined to the action of the State through its legislative, its executive, or judicial departments, but covers the instrumentalities by which the State acts, and whoever by virtue of public position in a State government deprives any one of any right protected by the amendment violates it, and if he acts in the name of the State and for the State and is clothed with the State's authority, his act is that of the Sate.

Bouvier's Law Dictionary (Rawle's Third Revision), vol. 2, 1964, defines "liberty" as "freedom from restraint. The faculty of willing, and the power of doing what has been willed, without influence from without."

Blackstone's Commentaries (Lewis' ed.), 134, describes "liberty" as the "power of locomotion, of changing situation, of moving one's person to whatsoever place one's inclination may direct, without imprisonment or restraint, unless by due course of law".

Bouvier's Law Dictionary (Rawle's Third Revision), vol. 3, 2576, defines "personal liberty" as being "freedom from physical and personal restraint; the right to the pursuit of happiness; freedom to go where one chooses and to pursue such lawful occupations as may seem suitable." In its broad sense personal liberty would include freedom from unlawful arrest and restraint, from unlawful seizures and searches, from assault and battery, from libel and slander, from general warrants of arrest, from unfair monopolies in trade, and from quartering soldiers in time of peace; and it would include also the right of trial by jury, liberty of conscience, freedom of the press, the right to travel and emi-

grate, to bear arms and to petition the Government for redress of grievances. But in its stricter sense it includes only freedom to move about as one pleases and to pursue any lawful calling.

37 C. J. 159 states that the term "liberty" is sometimes used as synonymous with "franchise", "license", "privilege" or "right". 5 Words & Phrases 4127, states that: "In a legal sense 'franchise' and 'liberty' are used as synonymous terms" . . . and that a 'franchise' is . . . a particular privilege or right granted by a prince or sovereign to an individual or to a number of persons". 5 Words & Phrases 4138, defines a license as "a privilege granted by a state". . . . We are, therefore, of the opinion that the suspension of operating privileges or license deprives the holder thereof of his liberty, in the broad meaning of the term, disclosed by the definitions cited.

The next question is whether such liberty is deprived without due process of law. 6 R. C. L. 434, declares:

"It has been said that due process of law must be understood to mean law in the regular course of administration through courts of justice, according to those rules and forms which have been established for the protection of private rights. Substantially the same idea is embodied in the statement that it means law according to the settled course of judicial proceedings, or in accordance with fundamental principles of justice, enforceable in the usual modes established in the administration of government with respect to kindred matters".

In 12 C. J. 1190 we find:

"Certainly 'due process of law', or 'the law of the land', does not mean merely an act of the legislature, for such a construction would abrogate all restrictions on legislative power. . . .

". . . due process of law means a law which hears before it condemns, which proceeds on inquiry, and renders judgment only after trial; law in its regular course of administration through courts of justice; a course of proceeding according to those rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights; a prosecution or suit instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt, or determining the title to property; an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights; the administration of equal laws according to established rules, not violative of the fundamental principles of private right, by a competent tribunal having jurisdiction of the case and proceeding on notice and hearing. The term under consideration has also been defined to mean a trial, or proceedings according to the course and usage of the common law. This latter definition, however, is entirely too limited, as due process may consist of process prescribed by statute and unknown to the common law; and the term means rather law prescribed and enforced in accordance with certain fundamental principles for the protection of private rights which our system of jurisprudence has always recognized".

6 R. C. L. 433 says:

"The term 'due process of law' includes all the steps essential to deprive a person of life, liberty, or property; it includes all the forms and acts essential to its application and to give effect to it. The means that may be employed to accomplish the purpose of the law is the process; in other words, 'process' is the mode by which the purpose of the law may be effected".

It is clear, therefore, from consideration of the foregoing authorities that the accepted meaning of "due process of law" is an orderly procedure of the law,

administered through courts of competent jurisdiction, where the accused has the right to enter any plea and especially a plea of autrefois acquit, if such is available to him; where the established principle that every one charged with guilt is presumed to be innocent until such guilt is established beyond a reasonable doubt; where the established rules of evidence are applied and observed; and where the fundamental principles of law and procedure prescribed for the protection of private rights are recognized and enforced.

The words of our learned brother, Judge Shull, in Commonwealth v. Madison, 16 D. & C. 824, 826, quoted in Commonwealth v. Bates, 17 D. & C. 626, 630, aptly express our thoughts in the instant case—the parentheses are ours to show the application to the instant case. He says:

"The real offense of this section is that it delegates power to a game protector (Secretary of Revenue) which, if exercised at all, should have been exercised in definite form by the legislature, for, as we have said, a government is presumably a government of laws and not a government of men. The very idea that one man may be compelled to hold his liberty or any material right either essential or incidental to the enjoyment of life and liberty at the mere will or caprice of another is intolerable in any country where freedom prevails, for indeed it is the very essence of slavery itself, and section 706 (Paragraph 4, Article (b), Section 615 of The Vehicle Code of 1931, P. L. 751) of this act vests in the game protector (Secretary of Revenue) discretion without prescribing a uniform rule of action. It gives to him an arbitrary and uncontrolled power without reference to all of the class to which this statute was intended to apply and without being controlled or guided by any definite rule or specified condition which all similarly situate may knowingly conform. Even though a law seem fair upon its face and impartial in its principles, yet, if it be open to administration by an individual with an evil eye and an unequal hand so as to make illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is still within constitutional prohibition: Yick Wo v. Hopkins, 118 U. S. 356".

Article I, sec. 9, of the Constitution of Pennsylvania, provides as follows:

"In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land".

A new question arises as to the interpretation of "law of the land". We have hitherto discussed and defined "liberty". Has the Secretary of Revenue deprived the appellant of his liberty of operating a motor vehicle by the law of the land?

The "law of the land" means a judgment of law in its regular course of administration through courts of justice: Fetter v. Wilt et al., 46 Pa. 457; Craig & Blanchard v. Kline et al., 65 Pa. 399; it means the law of the individual case as established in a fair and open trial or an opportunity given for one in court and by due course and process of law: Brown et al. v. Hummel et al., 6 Pa. 86. As used in the above section of the Constitution, it means "due process of law". It does not merely mean an act of the legislature: Norman v. Heist, 5 W. & S. 171; Banning v. Taylor, 24 Pa. 289; Menges v. Dentler, 33 Pa. 495.

At the time of the adoption of the Constitution in 1874, the Act of March 31, 1860, P. L. 427, had provided in section 32 that: "The courts of quarter sessions of the peace shall have jurisdiction and power within the respective counties

(1) to inquire, by the oaths or affirmations of good and lawful men of the county, of all crimes, misdemeanors and offenses whatsoever, against the laws of this commonwealth, which shall be triable in the respective county". In other words, the court of quarter sessions was given the power of hearing and determining all matters relating to crimes, whether they were misdemeanors or other offenses, except those crimes which remained, or were given, to the court of oyer and terminer.

Reckless driving, while a summary offense under the Vehicle Code, becomes cognizable by the court of quarter sessions by the provisions of section 1204 (a) and (b). In section 1204 (c) it is specifically provided that in no case where the defendant is found not guilty shall any costs of prosecution be imposed upon him by a magistrate or court of record. This discloses the plain legislative intent that when a defendant is adjudicated not guilty in the proper tribunal, he shall suffer no penalty of any nature.

It follows clearly, therefore, that to confer upon the Secretary of Revenue the power to overrule the tribunal assigned to determine his guilt or innocence and to penalize him notwithstanding his acquittal by such tribunal is to confer upon him a right which violates the law of the land as it is referred to in the Constitution.

Article v, sec. 1, of the Constitution of Pennsylvania, provides:

"The judicial power of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish".

The legislature cannot vest any judicial power in an administrative officer. It cannot appropriate to itself judicial power or in any way trench upon the province of the judiciary: Greenough v. Greenough, 11 Pa. 489; Ervine's Appeal, 16 Pa. 256. It may, of course, from time to time, create new courts, but in the matter under consideration it did not do so. Legislation delegating the exercise of judicial functions to administrative tribunals is unwise and pernicious and may be unconstitutional if it grants to such tribunal the exercise of uncontrolled discretion: Commonwealth v. Bates, 17 D. & C. 626. ". . . ministerial officers are incompetent to receive grants of judicial power from the legislature, and their acts in attempting to exercise such powers are necessarily nullities": 6 R. C. L. 172.

We, therefore, conclude for the reasons stated that section 615 (b) 2 of the Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, sec. 2, is unconstitutional, and the action of the Secretary of Revenue in suspending the operator's license of the appellant is null and void in that (1) it conflicts with the fourteenth amendment, sec. 1, of the Constitution of the United States in that it deprives the defendant of his liberty without due process of law and denies him the equal protection of the laws; (2) it conflicts with article I, sec. 9, of the Constitution of Pennsylvania in that it deprives him of his liberty without the judgment of the law of the land; and, (3) it conflicts with article v, sec. 1, of the Constitution of Pennsylvania in that it attempts to vest judicial power in the Secretary of Revenue.

And now, February 23, 1935, upon consideration of the whole record it is ordered and decreed that Ben. J. Gryctko, Jr., appellant, is not subject to suspension of operator's license, and the appeal is sustained at Commonwealth's costs.