John Andresky et al., Appellants *v.* West Allegheny School District, Appellee.

Argued October 5, 1981, before Judges MENCER, MacPHAIL and PALLADINO, sitting as a panel of three.

*Ronald N. Watzman, Watzman & Elovitz,* for appellants.

*Martin W. Sheerer,* for appellee.

*William Fearen,* with him *Michael I. Levin, Cleckner and Fearen,* for Amicus Curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE MENCER, December 16, 1981:

This is an appeal by John Andresky and others (appellants) from an order of the Court of Common Pleas of Allegheny County which affirmed the decision of the School Board of West Allegheny School District to suspend eleven teachers. We affirm.

On June 21, 1978, the School Board adopted a budget of 67 1/2 mills and voted against any teacher suspensions for the 1978-79 school year. At a special meeting held on June 30, 1978, the School Board rescinded this action, however, by decreasing the millage to 60 mills and establishing a teacher/student ratio of 1 to 22. The School Board then suspended seven professional employees and four temporary professional employees. After hearings held on October 5, November 9, and November 22, 1978, the School Board issued an adjudication confirming the suspensions, which the lower court affirmed. This appeal followed.

Appellants first argue that the School Board violated their due process rights by failing to accord

them hearings prior to their suspensions. In order to invoke the requirements of procedural due process, however, appellants must initially demonstrate that they were deprived of an interest encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth,* 408 U.S. 564 (1972). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. Clearly, the seven professional employees here have a legitimate claim to continued employment secured by state statute. Section 1122 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1122, provides that the contract of a professional employee may only be terminated for "immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement . . . [or] persistent and wilful violation of the school laws," and Section 1124 of the Code, 24 P.S. §11-1124, states that professional employees may only be suspended because of a substantial decrease in pupil enrollment, curtailment of the educational program, or consolidation of schools. Therefore, the seven professional employees are entitled to due process protection.

The four temporary professional employees[1] likewise have an enforceable expectation of continued employment. *Dicello v. Riverside School District,* 33 Pa. Commonwealth Ct. 39, 380 A.2d 944 (1977). Section

---

[1] The chief distinction between professional employees and temporary professional employees is that temporary professional employees lack tenure and certification. *Phillipi v. School Dist. of Springfield Twp.,* 28 Pa. Commonwealth Ct. 185, 367 A.2d 1133 (1977).

1108(a) of the Code, 24 P.S. §11-1108(a), provides that "[n]o professional employe shall be dismissed unless rated unsatisfactory," and subsection (b) of Section 1108 requires that a temporary professional employee be tendered a regular professional employee contract where he has been certified to be satisfactory. The continued employment of a temporary professional employee is thus not a matter of the school board's unfettered discretion.

Having determined that due process applies to appellants, "the question remains what process is due .... [D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Notice and opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). To ascertain whether the opportunity to be heard was provided at a time sufficiently meaningful to satisfy due process, we must balance the School Board's interest in the form of procedure afforded appellants against the appellants' interests in a more rigorous procedure. *See, e.g., Goldberg v. Kelly,* 397 U.S. 254 (1970).

Applying that test, we are satisfied that the postsuspension hearings complied with due process requirements. Certainly, appellants have a financial interest in assuring that the suspensions stem from one of the permissible grounds established in Section 1124 of the Code. The professional employees are protected, however, by statutory reinstatement rights. The School Board, on the other hand, has a strong interest in suspending employees where necessary because of a substantial decrease in pupil enrollment. Furthermore, the postsuspension hearings do not impair the liberty interests of appellants, since the sus-

pensions are not for reasons that might stigmatize appellants, as charges of immorality or dishonesty might. *Board of Regents v. Roth.* On balance, we conclude that a postsuspension hearing comports with due process by providing a reasonable accommodation of the competing interests.[2]

Appellants next argue that the School Board suspended them for economic reasons, which are not permissible bases for suspensions under Section 1124 of the Code. Appellants contend that, since the enrollment data did not change between the June 21st and the June 30th meetings, the School Board was actually motivated by economic considerations in decreasing the millage and setting a teacher/pupil ratio. The record clearly shows, however, that over a five-year period the School District's enrollment declined from 3,443 to 3,064 students. We are satisfied that this is a substantial decline in enrollment within the meaning of Section 1124(a), which therefore created the need for teacher suspensions.[3] In view of this determination, the economic implications for the School District are not pertinent. *See Platko v. Laurel*

[2] The cases cited by appellants, *Ashley v. Chester-Upland School Dist.,* No. 78-4037 (E.D. Pa., filed May 9, 1979), and *Skehan v. Bd. of Trustees,* 501 F.2d 31 (3d Cir. 1974), *vacated and case remanded on other issues,* 421 U.S. 983 (1975), are inapposite because they concern a teacher's right to a hearing prior to *dismissal.* The decision of the Ninth Circuit in *Peacock v. Bd. of Regents,* 510 F.2d 1324 (9th Cir.), *cert. denied,* 422 U.S. 1049 (1975), is more pertinent. The court ruled there that a tenured college professor was not denied due process by a post*suspension* hearing on his status as head of the surgery department.

[3] Appellants also maintain that the suspensions resulted in an alteration of the educational program without following the procedures mandated in Section 1124(2). We find no merit in this contention. The School Board suspended appellants pursuant to Section 1124(1), not Section 1124(2). The procedural requirements of Section 1124(2) are therefore inapplicable.

*Highlands School District*, 49 Pa. Commonwealth Ct. 210, 410 A.2d 960 (1980).

Appellants also assert that the School District did not correctly calculate seniority rights in making the suspensions. Appellant Frank Cole, who began employment in 1976, argues that his seniority is greater than that of Kathy Henkel, who began employment in 1966, since she took a maternity leave in the 1977-78 school year which caused her to lose all of her accumulated seniority. Appellant Dolores Augustin, who started in 1976, argues that her seniority is greater than that of Mary Jo Arbogast, who started in 1974, since Arbogast took a maternity leave during the 1976-77 school year which reduced her seniority to one year as of the suspension date.

Section 1125.1(a) of the Code, added by Section 3 of the Act of November 20, 1979, P.L. 465, 24 P.S. §11-1125.1(a) provides: ''Approved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue to accrue during suspension and all approved leaves of absence.'' This section became effective after the suspensions in issue here. Prior to the passage of Section 1125.1, however, the Code contained no provision regarding the seniority rights of those who take approved leaves of absence, other than sabbatical leaves.[4] We do not believe that the School Board Committed an error of law by permitting the accrual of seniority during maternity leaves, in compliance with its collective bargaining agreement

---

[4] Section 1166 of the Code, 24 P.S. §11-1166, provides that a teacher who has completed ten years of satisfactory service as a professional employee shall be entitled to a one-year sabbatical leave of absence for restoration of health, study, travel or other purposes. Section 1170 of the Code, 24 P.S. §11-1170, establishes the retention of seniority rights during sabbatical leaves of absence.

with the professional employees. The cases of *Wilchenski v. Throop Borough School District,* 383 Pa. 394, 119 A.2d 510 (1956), and *Halko v. Foster Township School District,* 374 Pa. 269, 97 A.2d 793 (1953), cited by appellants, are not persuasive because their holdings are based upon factual circumstances not present here. In *Wilchenski,* the Court ruled that a teacher's absence constituted a break in service for seniority purposes where the teacher was absent from work for approximately two months because of physical complications arising during pregnancy and *no formal or express leave had been authorized by the school board.* The Court in *Halko* held that a teacher's span of seniority had been broken when he extended his one-year sabbatical leave of absence by two additional years. We do not believe that these cases should be controlling here since the professional employees were taking *approved* maternity leaves of absence of less than one year in duration.

Furthermore, our Supreme Court, in *Fisher v. Warakomski,* 381 Pa. 79, 112 A.2d 132 (1955), ruled that a teacher did not forfeit her seniority rights by taking a leave of absence that could have been granted under the sabbatical leave section of the Code. Since she was qualified by length of prior service and her leave did not extend beyond one year, Kathy Henkel's absence could be considered a "sabbatical leave" for seniority purposes. By analogy, Mary Jo Arbogast's absence could be characterized as a temporary disability for which she would be allowed under the Code to use her accumulated sick days, with no loss in seniority. We therefore agree with the lower court that the School Board did not miscalculate appellants' seniority rights.

Appellants next argue that the School Board failed to realign its staff in such a way that the teachers

with the longest years of service could be retained. *See Welsko v. Foster Township School District*, 383 Pa. 390, 119 A.2d 43 (1956). While appellants suggest various plans that could have provided openings for them, we find no evidence in the record to indicate that the Board abused its discretion by failing to adopt such plans. *Welsko* does not require the Board to realign teachers where such realignment is impractical, and we may not substitute our judgment for that of the School Board in this respect. *Platko.*

Appellants also contend that the School Board suspended more than the "necessary" number of professional employees, within the meaning of Section 1124 of the Code. Specifically, appellants maintain that, since a retained employee had been granted a sabbatical leave for the 1978-79 school year, another suspended employee was in fact needed. We find no merit in this contention. Where the student enrollment declined by 11 percent over a five-year period, the School Board did not act improperly by reducing its teaching staff by 7 percent. Therefore, once the Board properly determined the necessary number of suspensions, the grant of a sabbatical leave did not create another position. It merely created, as in any other year in which an employee takes an approved leave, the need for a substitute for the term of the leave.

Citing *McKelvey v. Colonial School District*, 35 Pa. Commonwealth Ct. 264, 385 A.2d 1040 (1978), appellants finally argue that they are entitled to pay from the date they requested a hearing until the date the School Board issued its adjudication. We disagree. In *McKelvey*, we held that the failure to provide an entitled hearing required reinstatement of the employee with back pay. Appellants here were not

deprived of a hearing nor have they shown that the School Board deliberately delayed in filing its adjudication.

Order affirmed.

### ORDER

AND Now, this 16th day of December, 1981, the order of the Court of Common Pleas of Allegheny County, dated January 26, 1981, affirming the decision of the School Board of the West Allegheny School District to suspend John Andresky, Dolores Augustin, Suzan Braun, Frank Cole, Kathleen Goss, Joseph Olszewski, Jan Senovich, Paul L. Tillson, Debbie Turici, Edward P. Vignale, and Michele Wisniewski, is hereby affirmed.