**Sassani v. Mount Carmel Area School District**

*Lynne L. Wilson*, for the Pennsylvania State Education Association.

*Gerald E. Malinowski, Eugene N. McHugh*, for the Pennsylvania School Board Association, Inc.

KREHEL, *P.J.*, March 15, 1984—Before the court is appellants' appeal from a Local Agency Adjudication.[1] Both parties have filed briefs and presented oral arguments, all of which have been duly considered.

This action arises out of Resolutions passed on August 27, 1983 by the Board of Directors of appellee. The first resolution resulted in the demotions of appellants Moleski, Hodrick, and Sassani. The second resolution resulted in the suspensions of appellants Hepfer, Hollingshead, and Giacomini.

While the parties have raised several issues, we deem it necessary to determine only (1) whether the court has jurisdiction over the appeal to the extent that it concerns the demoted Appellants; (2) whether the appellee School District experienced a substantial decrease in enrollment, and (3) whether the Appellee School District improperly failed to realign its staff.

## I. JURISDICTION

The parties are in agreement that this court has jurisdiction to determine the suspension and realignment issues. Appellee contends, however, that we do not have jurisdiction over the demotion

---

1. We note the February 28, 1984 withdrawals of appellants noll and jurgil from this appeal.

issues. Appellee argues that the Secretary of Education has exclusive jurisdiction to determine the demotion issues. Appellants argue that the court has jurisdiction over the demotion issues because the demoted teachers are challenging their demotions as improper realignment of staff.

Section 11-1151 of the Public School Code of 1949, 24 P.S. §1-101, et. seq., as thereafter amended, provides that a demoted professional employee, after a hearing before the board of school directors, has the right to appeal in the same manner as a dismissed professional employee. This brings us to 24 P.S. §11-1131, which provides for an appeal to the "Superintendent of Public Instruction," now the Secretary of Education.

Section 11-1125.1(c) of the Public School Code provides that a school district shall realign its professional staff to insure that more senior employees are provided the opportunity to fill positions for which they are certificated. Because 24 P.S. §11-1125.1 is entitled "Persons to be suspended" it would appear at first blush, that Appellee must prevail on this issue. Two Commonwealth Opinions cited to us by the parties, however, cause our complexion to pale.

In David Shestack v. General Braddock Area School District, 63 Pa. Commw. 204, 437 A.2d 1059 (1981), an elementary school principal sought to appeal his demotion to a classroom teacher. He had been displaced from his principal position by another principal whose school had been closed due to a decline in pupil enrollment. While the General Braddock Area School District labeled Shestack as a demoted professional employee, the Commonwealth Court saw that demotion as being part of a realignment plan and concluded accordingly that

Shestack was entitled to the benefits of 24 P.S. §1125.1(c).

In Fox Chapel Area School District v. Robert J. Condron, _____Pa. Commw. _____, 468 A.2d 1175 (1983), a school district decided to eliminate an elementary principal position due to a substantial decrease in enrollment. It demoted Condron to a classroom teaching position based upon its conclusion that he was the least competent of its elementary principals. Condron apparently contended that his demotion was, in fact, a realignment such that Section 1125.1(c) applied rather than Sections 1151 and 1131. The School Board, however, insisted on proceeding under Section 1151 after which Condron appealed to the Secretary of Education who agreed with Condron that the School Board should have proceeded under Section 1125.1(c). Accordingly, the Secretary of Education remanded the matter to the School Board for a hearing pursuant to Section 1125.1(c) from which any further appeal would have been to a court of common pleas.

We believe that these cases may be consistently read to mean that when a professional employee is demoted as part of a plan of realignment due to suspensions affected pursuant to 24 P.S. §1124, then Section 1125.1(c) rather than Sections 1151 and 1131 are applicable. It is clear that Shestack was displaced by a senior professional employee, that in all probability a classroom teacher was suspended, and that all of this was initiated due to a decline in student enrollment. While Condron was not displaced by another professional employee, he was demoted due to a decline in student enrollment which most likely resulted ultimately in the suspension of an elementary school classroom teacher.

Were we to ascribe this to be the only reading to be given these cases, we would conclude that this

174

court does not have jurisdiction to hear the appeal as it pertains to the demoted Appellants. The record reflects that none of the demoted Appellants were displaced by senior professional employees. It further appears that the demotion of these appellants to half-time status did not result directly or indirectly in the suspension of any other professional employee.

The foregoing, however, is not the only reading which may be given to these cases. In Shestack, the Commonwealth Court concluded that Sec. 1125.1(c) is not limited in application to suspend employees.[2] From this we conclude that the Commonwealth Court is interpreting Sec. 1125.1(c) to apply wherever a professional employee is demoted for one of the four reasons set forth in Sec. 1124. By this interpretation we are bound.[3]

Accordingly, because the School Board's Resolution to demote appellants herein states that it was based upon a substantial decline in student enrollment,[4] we conclude that this court has jurisdiction over the appeal of the demoted appellants.

## II. THE DECLINE IN ENROLLMENT

In concluding that there had been a substantial decline in enrollment, Appellee relied on figures provided by its Superintendent of Schools showing

---

2. 63 Pa. Commw. at 208, 437 A.2d at 1061.

3. Further, where, as here, the demotions are inextricably intertwined with suspensions by the common denominator of declining pupil enrollment, it makes sense from the standpoints of judicial economy and legal consistency to have the appeals on both personnel actions heard in the same forum rather than relegating suspensions to a court of common pleas and demotions to the Secretary of Education, thereby creating the possibility of two different results out of one set of facts.

4. See 24 P.S. §11-1124(1).

that as of the 1982-83 school year, there had been a ten-year decrease of 495 students, a 21.8 percent decrease, and a five year decrease of 261 students, a 12.8 percent decrease. Appellants have argued that the decrease in pupil enrollment was insubstantial and indicated at oral argument that it was less than five percent.

While appellants contend that appellee used inappropriate source materials when making its assessment, when we look at Appellants' Exhibit 3, we see that their figures reflect a ten year decrease of 550 students, a 23.5 percent decrease, and a five year decrease of 239 students, a 10.2 percent decrease.

We can see no merit to the appellants' argument that appellee utilized the wrong source materials resulting in an incorrect result when appellants' proffered source materials reflect a greater decline in enrollment over the ten years and only a 2.6 percent less decline over the five years than the Appellee's sources reflect.

Further, it appears that either parties' figures are sufficient to establish a substantial decline in pupil enrollment under the case law. See Phillippi v. School District of Springfield Township, 28 Pa. Commw. 185, 367 A.2d 1133 (1977), an 11.7 percent decline over five years; Andresky v. West Allegheny School District, 63 Pa. Commw. 222, 437 A.2d 1075 (1981), an 11 percent decline over a five year period; and Platko v. Laurel Highlands School District, 49 Pa. Commw. 210, 410 A.2d 960 (1980), a 13 percent decline over a seven year period.[5]

5. With respect to the projected increase in elementary enrollment, we note that appellants taught all or a substantial portion of their time at the high school level. It will be at least six years until the increased pupil enrollment at the elementary level will be elevated to the high school level. The fact that appellee hired six additional elementary teachers in the two

When appellants argue that the decline has been less than five percent, they are apparently referring to the annual decreases.

Under this reasoning, if a school district having 1,000 students lost 20 students per year, it would have no students after 50 years, but couldn't suspend any teachers because there had been at most only a two percent decrease in enrollment! It does violence to reason when posed in this context.

We cannot remotely begin to believe that this would be the method the legislature envisioned to define a substantial decline in pupil enrollment.[6]

With respect to appellants' contention that the Appellee's personnel actions were approved for economic and/or budgetary reasons, in view of our conclusion that the actions were justified by a substantial decline in pupil enrollment, any economic implications are no longer pertinent. See Andresky, supra; See also, Platko, supra. It would seem to follow that any hostility toward appellant Moleski

---

years preceding the events herein, demonstrates, we think, that Appellee has been and is rationally, reasonably, and sensibly planning to have an adequate and efficient educational system and program over the long haul.

6. While appellants made a belated contention at oral argument that appellee is not entitled to justify its actions based upon a curtailment or alteration of the education program, we note that appellee's curtailment/alteration arguments have been with respect to the suspended Appellants only and that the Resolution with respect to the suspended Appellants did include curtailment or alteration of the education program as one of its underlying reasons. Because Appellants have not otherwise addressed the curtailment/alteration issue and, noting that Section 11-1124 is in the disjunctive, because of our determination that there was a substantial decline in pupil enrollment, it is unnecessary to pass upon the Appellee's arguments that the suspensions were additionally justifiable on the basis of curtailment or alteration of the education program.

would also become irrelevant. Such an analysis would also be keeping with the prevailing trend in labor relations generally, whereby a personnel action which would have been validly taken remains valid even though an element of it is invalid. See Mt. Healthy City School District v. Doyle, 429 U.S. 274 (1977), which has since been adopted by the National Labor Relations Board in Wright Line, A Division of Wright Line, Inc., 251 NLRB no. 150, 105 LRRM 1169 (1980).[7]

With respect to appellants' contention that the appellees' board of directors could not have considered the record developed at the hearings before they voted, we note that both resolutions certify that they were passed after careful consideration of all the testimony. We are satisfied that the time between the delivery of the hearing transcripts and the time of the vote was sufficient for the board members to have read them. Moreover, we reiterate that the record substantiates the underpinning of the resolutions, i.e., a substantial decline in pupil enrollment.

## III. REALIGNMENT

Section 11-1125.1(c) of The Public School Code provides, as noted previously, that a school district shall realign its professional staff so as to insure that more senior employees are provided with the oppor-

---

7. This is also dispositive of appellants' allegation that the suspensions and demotions were in retaliation for their union activities. Our jurisdiction in this matter is limited to determining whether one of the criteria of Section 11-1125 has been met, which would justify appellee's overall decision to reduce its professional staff. To the extent that any of appellants are contending that their individual selection for demotion or suspension was due to their union activities, that is an issue for the Pennsylvania Labor Relations Board to decide.

tunity to fill positions for which they are certified and which are being filled by less senior employees.

Appellants Hepfer and Sassani are arguing that they should have been permitted to bump teachers senior to them who in turn could have bumped teachers with less seniority than appellants, thereby resulting in the least senior teachers ultimately being suspended and/or demoted. Under this scheme, the more senior teachers caught in the middle would have had to give up their present positions and move into other areas for which they were certified.

Appellee has argued that Section 11-1125.1(c) does not require realignment across certification and subject area lines.

Appellants place their reliance on East Allegheny School District v. Janero, ____Pa. Commw.____, 467 A.2d 665 (1983) wherein it was held that a more senior guidance counselor who held a certificate to teach home economics should have been realigned into a home economics teaching position rather than a less senior guidance counselor being suspended. Appellee relies on Godfrey v. Penns Valley Area School District, 68 Pa. Commw. 166, 449 A.2d 765 (1982), wherein it was held that a school district did not have to realign more senior music teachers into other teaching positions for which they were certified in order to avoid suspending the least senior music teacher.

In Godfrey it appears that the suspension was expected to be permanent. In Janero, the suspension was only for 41 days. It is for this reason, we think, that the Commonwealth Court found realignment practical in the latter case but not in the former.

Here, unfortunately, it would appear that the demotions and suspensions are for the foreseeable future and must be viewed as permanent. It is one

thing to displace a senior teacher for the benefit of a less senior teacher if that displacement will be only for a known finite and short period of time. It is quite another thing to displace the established teachers, perhaps forever, to benefit a less senior teacher. In the latter situation, instead of the education system having the benefit of a teacher experienced in handling a subject, it is saddled with that same teacher redeveloping a program and skills to teach another subject.

With respect to appellant Moleski's contention that he should have been realigned to include a position as a part-time computer awareness teacher, the record reflects that he lacked the requisite Program Specialist Certificate. While appellant Moleski argues that he was not granted such a certificate because of personal hostility toward him on the part of appellee's superintendent, the record reflects that appellant Moleski did not request the Superintendent to recommend him for this certification until August 15, 1983. This was approximately two months after he had been notified of his pending demotion, about two weeks before appellee school board made its final determinations after the required hearings, and only one day before he testified at those hearings. In the circumstances of his eleventh-hour attempt, appellant Moleski cannot be heard to complain because he received no consideration for realignment into a position as a part-time computer awareness teacher.[8]

---

8. This is all the more so when we note the school superintendent's unrebutted testimony that several years earlier he had advised appellant Moleski to obtain a certification to teach Spanish, which appellant Moleski apparently chose to ignore until the events herein opened his eyes to the wisdom of becoming multifaceted.

Finally, appellants argue that any of them could have been realigned into non-professional positions. When the legislature provided for realignment of a school district's professional staff, we believe that is all they intended. If the legislature had intended the realignment to encompass non-professional positions, they would have said so explicitly or eliminated the limiting word "professional" which precedes "staff."[9]

Accordingly, we enter the following

## ORDER

And now, this March 15, 1984, it is hereby ordered, adjudged, and decreed that appellants' appeal from a Local Agency Adjudication be dismissed.

---

9. Our conclusions are limited to findings that appellee was not required under Section 11-1125.1(c) to realign appellants. It is for the Pennsylvania Labor Relations Board to determine whether appellee failed and/or refused to realign any of appellants because of their union activities.