Charles E. Gibbons, Appellant *v.* New Castle Area School District, Appellee.

Argued November 13, 1984, before Judges WIL-
LIAMS, JR., COLINS and BARRY. Reargued May 8, 1985,
before President Judge CRUMLISH, JR., and Judges
ROGERS, CRAIG, MACPHAIL, DOYLE, BARRY and PALLA-
DINO.

*Gregory S. Fox,* with him, *Kenneth E. Fox, Jr.,*
for appellant.

*Dominick Motto, Chambers, Nicolls, Balph, Paul &
Motto,* for appellee.

OPINION BY JUDGE CRAIG, November 13, 1985:

This is an appeal by Charles E. Gibbons (appellant) from an order of the Court of Common Pleas of Lawrence County which affirmed a decision by the New Castle Area School District's Board of School Directors to reassign appellant from his position as principal of Benjamin Franklin Junior High School (Franklin) to assistant principal of New Castle Senior High School (Senior High).

In June of 1982, the board closed George Washington Junior High School (Washington), one of the two junior highs in the district at that time; the board transferred the seventh and eighth grade students from Washington to Franklin and the ninth grade students to the Senior High. The board's decision to close Washington required a realignment of the secondary school administrators involving the abolition of two secondary administrator's positions. Consequently, the board returned the two least senior secondary administrators to the classroom as teachers, and assigned the two most senior administrators, who had been the principal and assistant principal of Washington, to Franklin as its principal and assistant principal. Appellant, who was the third most senior secondary school administrator, and who had previously been principal of Franklin, was appointed assistant principal of the Senior High. The board retained Frank Dattilo, who ranked fifth on the seniority list for secondary school administrators, in his position as principal of the Senior High.[1]

Pursuant to the Local Agency Law, 2 Pa. C. S. §553, appellant requested a hearing to challenge his reassignment. At a hearing on August 31, 1982, the board presented the testimony of the Superintendent

---

[1] The fourth most senior secondary school administrator retained her position as assistant principal of the Senior High.

of Schools.[2] Because the appellant had more seniority than Mr. Dattilo, the superintendent had considered recommending that appellant be assigned to the position of principal at the Senior High. However, the superintendent decided against that recommendation because the Senior High principal has more responsibilities than a junior high principal and Mr. Dattilo had demonstrated success in managing the additional responsibilities.[3] The superintendent also testified that the salary and certification requirements for principal and assistant principal of the secondary schools are the same.

After the hearing, the board issued an adjudication in which it concluded that, although appellant had more seniority than Mr. Dattilo, appellant's reassignment was not arbitrary or capricious but was reasonable because it was based upon proper considerations of the needs of the district. The board therefore affirmed the reassignment.

Appellant then appealed to the trial court claiming that the board's realignment plan violated section 1125.1(c) of the Public School Code of 1949, Act of

---

[2] The superintendent testified that he had been involved with the board's deliberations concerning the closing of the Washington School. The superintendent made recommendations to the board about the realignment of staff which the board considered and adopted by appropriate resolutions.

[3] The superintendent testified that the Senior High, as compared to a junior high school, had more students, a larger faculty, a larger budget, more extracurricular activities, a more complicated athletic program, more community involvement and a summer school program. Additionally, the Senior High principal is directly involved with accreditation and curriculum while a junior high school principal is not.

The superintendent also testified that because of the shifting of large numbers of students and faculty during the 1982-83 school year, he felt it was important that Mr. Dattilo, who had experience with the greater responsibilities of the Senior High, be kept in place.

March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1125.1(c), because the realignment was not based solely upon seniority. The trial court affirmed the board's adjudication and the appellant filed this appeal.

Our scope of review is specified by the Local Agency Law, 2 Pa. C. S. §754(b), in that we must affirm the action of the board unless there has been a violation of appellant's constitutional rights, an error of law, or the findings of fact are not supported by substantial evidence.

Initially we note that the trial court properly held that section 1125.1(c) is applicable to the case at bar. The law is now settled that section 1125.1(c) applies to demotions as well as suspensions of professional employees caused by a realignment of the professional staff within a school district. *Appeal of Cowden,* 87 Pa. Commonwealth Ct. 165, 486 A.2d 1014 (1984); *Fry v. Garnet Valley School District,* 86 Pa. Commonwealth Ct. 206, 485 A.2d 508 (1984); *Olson v. Board of School Directors Methacton School District,* 84 Pa. Commonwealth Ct. 189, 478 A.2d 954 (1984); *Shestack v. General Braddock Area School District,* 63 Pa. Commonwealth Ct. 204, 437 A.2d 1059 (1981).

Section 1125.1(c) of the Public School Code provides:

A school entity shall realign its professional staff so as to *insure* that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes. (Emphasis supplied.)

With the enactment of section 1125.1, containing the above subsection (c), in 1979, the legislature repealed section 1125 of the Code.[4] That former section 1125

---

[4] *Formerly* 24 P.S. §11-1125, repealed by Act of November 20, 1979, P.L. 465, §2.

had focused upon suspensions, specifically suspensions which result "[w]henever a board of school directors decreases the size of the staff of professional employes. . . ." Unlike the new section 1125.1, which does not modify its references to seniority with any reference to efficiency ratings, the repealed section 1125(a) called for "suspensions to be made . . . on the basis of efficiency rank determined by ratings. . . ." Under its subsection (b), professional employees were to be retained on the basis of seniority rights only "where there is no substantial difference in rating."

By contrast, the new provision, section 1125.1, in its subsection (a), requires, where suspensions are involved, that professional employees be suspended "in inverse order of seniority within the school entity of current employment." Subsection (b) mandates that employees retain seniority rights throughout and beyond any reorganization or consolidation. Following subsection (c) quoted above, subsection (d) requires reinstatement on the basis of seniority.

Thus, by the amendment, the legislature eliminated section 1125's earlier modifications of seniority rights in terms of ratings, and established seniority as the sole and preeminent consideration in connection with realignments, or when professional staff is otherwise decreased as a consequence of the approved causes for reduction of staff by suspension enumerated in section 1124, 24 P.S. §11-1124, as: (1) substantial decrease in enrollment, (2) curtailment or alteration of the educational program and (3) consolidation of schools. This case obviously involves a realignment which included a consolidation of schools as a consequence of the closure of one of the junior high schools.

The Pennsylvania Supreme Court foreshadowed the legislative emphasis upon seniority as the controlling criterion. Even under the former section 1125,

the Supreme Court, in *Welsko v. School District of the Township of Foster,* 383 Pa. 390, 119 A.2d 43 (1956), affirmed the reinstatement of a teacher who had been suspended because of a decrease in pupil enrollment despite his greater seniority rights. Apparently no efficiency rating considerations were present to override the seniority criteria. The Supreme Court stated:

> Seniority is a matter not to be treated lightly. The very stability of our schools depends on retaining those teachers who because of long years of experience and devotion have earned the obedience of the pupils, the admiration of the parents, and the respect of the community. Considering the comparatively low salaries paid the teaching profession, the very least that should be guaranteed them is fireproof tenure for their invaluable services in preparing the future citizens of this great Republic.

*Id.* at 392, 119 A.2d at 44.

Although dictum in *Welsko* acknowledged that there was no legislative intent "to interfere with the control of school policy and courses of study selected by the administrative bodies," and also stated that the Supreme Court was "not unmindful of the difficulties which confront a school board in setting up curricula fitting teachers to the very pedagogical tasks," the actual holding in the case underscored seniority rights as controlling in these situations.

In this case, with the statute now requiring that realignment be made so as to *insure* "that more senior employees are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employees," the school board has arranged the details of the realignment to place the appellant in the position of assistant principal of a high school, beneath a principal having

less seniority, with respect to a position for which both are certificated. Compliance with section 1125.1 (c) is attainable because the realignment, in terms of the schools and individuals involved, makes it possible that appellant, the more senior employee, could fill the principal's position being filled by a less senior employee. However, the board's action has fallen short of compliance because the decision in fact fails to "insure" that the more senior employee is "provided with the opportunity" to fill the position in question.

Therefore, the trial court decision must be reversed, so that the appellant shall be appointed to the principal's position, thus giving him the opportunity which the statute guarantees. This holding is in line with our decision in *Appeal of Cowden,* where we held that a school board erred in reassigning an elementary school principal to teaching duties, when one of six elementary schools was closed, while retaining principals with lesser seniority. Even though the prevailing professional had the lowest performance rating among the principals involved, this court was compelled to conclude that:

> The obvious intention of Section 1125.1(c) is to require school districts to assign positions to their professional staff strictly on the basis of seniority, and to similarly realign their professional staff on the basis of seniority when personnel changes have to be made. There is no restriction in Section 1125.1(c) limiting the duty to realign only to those instances when personnel changes have to be made because of suspensions. . . .

87 Pa. Commonwealth Ct. at 169, 486 A.2d at 1016.

The trial court here relied in part on this court's line of decisions under the repealed section 1125 which, as noted above, did not rely upon seniority

alone, and did not contain any mandate that realignment be accomplished so as to provide senior professionals with opportunities for which they are certificated. *Smith v. Board of School Directors of Harmony School District,* 16 Pa. Commonwealth Ct. 175, 328 A.2d 883 (1974), involved the repealed section 1125 and, moreover, upheld the suspension of two teachers having the lowest seniority, noting further that they were not certificated for positions subsequently filled by new personnel.

*Platko v. Laurel Highlands School District,* 49 Pa. Commonwealth Ct. 210, 410 A.2d 960 (1980), is also inapposite. There this court upheld the suspension of a teacher who, although having greater seniority, lacked a certification in music. Because the case was governed by the repealed section 1125, this court declined to mandate a different realignment—moving two other teachers—in order to benefit the teacher with the greater seniority.

With respect to all our decisions under the former section 1125, the crucial point is that such repealed section was devoid of the new section's express mandate as to realigning with seniority as a controlling factor. The old section did not even contain the word "realign," nor any explicit direction that realignments must include an *insurance* of opportunity for senior qualified professionals.

*Tressler v. Upper Dublin School District,* 30 Pa. Commonwealth Ct. 171, 373 A.2d 755 (1977), turned on the priority which the Code confers upon professional employees over temporary professionals. Again, under the terms of the former section 1125, we declined to mandate an alternative realignment, which the board had considered and found to be impracticable.

*Andresky v. West Allegheny School District,* 63 Pa. Commonwealth Ct. 222, 437 A.2d 1075 (1981), up-

held the suspension of professional employees with the least seniority and, being one of the last of our decisions under the repealed section 1125, declined to require the school board to consider a different realignment in order to retain more openings.

Also governed by the former section 1125 was *Derry Township School District v. Finnegan*, 92 Pa. Commonwealth Ct. 60, 498 A.2d 474 (1985). There, considering suspensions resulting from a substantial decrease in enrollment, this court upheld the suspension of the teacher who had the lowest rating, giving consideration to the now-repealed provision which, when there were substantial differences in ratings, accorded seniority lesser consideration in accordance with weighting principles. The dissenting views in *Finnegan* were concerned with the relative status of tenured employees as compared to temporary professional employees, a consideration not involved here.

In *Shestack v. General Braddock Area School District*, this court first interpreted section 1125.1(c) in a case where a realignment, involving the closing of one elementary school, resulted in that school's principal displacing the complaining employee from his position as an elementary school principal. We held that the amended section entitled the displaced principal to a hearing before his board to consider whether the realignment was otherwise than one which insured that the more senior employees had the opportunity to fill the positions for which they are certified.

In *Godfrey v. Penns Valley Area School District*, 68 Pa. Commonwealth Ct. 166, 449 A.2d 765 (1982), we affirmed a trial court decision, 22 D. & C. 3d 466 (1981), which displaced the least senior member of a music department. As the trial judge here astutely recognized, there was no basis for mandating an alternative realignment in the *Godfrey* case because the

complaining teacher's certification was different from that of the individual whose displacement he sought through the realignment process.

Finally, in *Olson,* this court declined to apply section 1125(c) to situations involving only transfers or change in location, as distinguished from issues involving a higher position being filled by a less senior employee; in that case, the board had merely transferred an industrial arts teacher from a junior high school to a senior high school. This court's decision made it clear that "a professional employee does not acquire a vested right to teach in any certain class or in any certain school. . . ." 84 Pa. Commonwealth Ct. at 191, 478 A.2d at 955.

As noted above, our decision here does not require any change of the board's realignment in terms of the schools or the programs involved. Here, although both of the concerned principals had equal certification, the board believed that the senior high school administration experience acquired by the professional with lesser seniority was a consideration sufficient to bar the more senior professional from the opportunity.

However, with both parties possessing qualifications officially certified to be equal, the board action here has the effect of reinstating the consideration for non-seniority factors which the legislature eliminated when it repealed the former section 1125. Moreover, the board here conferred a priority upon the less senior employee, by virtue of experience, which was more subjective in nature than efficiency ratings developed through a formal process.

Even if this court were to hold the view that this board's individualized approach constituted a more sound policy in educational administration than strict adherence to seniority, we are not permitted, by judicial legislation, to modify the policy which the legis-

lature has emphatically declared. In accordance with the familiar principle we noted in *Shestack,* when the words of a statute are clear and free from ambiguity, a court cannot disregard the letter of the statute under the pretext of pursuing its spirit. 1 Pa. C. S. §1921(b).

Accordingly, the decision is reversed.

### ORDER

Now, November 13, 1985, the order of the Court of Common Pleas of Lawrence County, No. 177 of 1982, dated August 24, 1983, is reversed.

---

DISSENTING OPINION BY JUDGE PALLADINO:

I dissent.

The result of the majority's decision is that, whenever a school district realigns its staff, senior teachers and administrators will have the right to choose to fill any position for which they are certificated and which is being filled by an employee with less seniority. The essence of this result is that whenever a realignment is necessary, employees with greater seniority will be able to "bump" less senior employees in order to suit the senior employee's desires without any regard to the overall impact on the school district or the other professional staff. Furthermore, the school district will be powerless to take into consideration other legitimate concerns, such as the amount of experience a teacher may have in teaching a given subject, or to insure that the least senior employees of the district are the ones who will be suspended where a staff reduction is necessary. It is not difficult to imagine a situation where a more senior teacher, who is certificated in two areas and whose position is abolished during a realignment, decides to "bump" a less senior teacher in the senior teacher's second

area of certification. If the less senior teacher is only certificated in one area but has more seniority then teachers in other areas, the less senior teacher with a single certification will be suspended even though there are other professional employees with less seniority who will be retained.

I do not believe that this is the result intended by the legislature when it enacted Section 1125.1(c),[1] nor do I believe that it is consistent with existing law. The Pennsylvania Supreme Court, in *Welsko v. School District of the Township of Foster,* 383 Pa. 390, 119 A.2d 43 (1956), although applying the predecessor of Section 1125.1,[2] clearly enunciated the competing concerns which face a school district when realigning professional employees. The *Welsko* Court stated:

> A school board has not done its duty simply because it has retained no one with less continuous years teaching the subject which the suspended teacher was qualified to teach. Where a reduction in teaching staff is called for, the Board's first consideration should be how to retain those teachers with the longest years of service by realigning the staff so that the remaining teachers, after the reduction has been effected, can teach the subjects of those who, because of lesser seniority rights, have been suspended.

*Id.* at 393, 119 A.2d at 44.

The *Welsko* Court also recognized, however, that in realigning professional staff a school board is confronted with many difficulties in setting up curricula and assigning teaching personnel. The Court stated that the legislature did not intend the Teachers' Ten-

---

[1] The Public School Code, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1125.1(c).

[2] *Formerly* 24 P.S. §11-1125 (repealed).

ure Act "to interfere with the control of school policies and courses of study selected by the administrative bodies." *Id.* at 393-394, 119 A.2d at 44-45.

The cases decided subsequent to *Welsko* have continued to struggle with the conflict between placing paramount importance on the seniority rights of professional staff and the need to allow the school district some discretion to consider other factors when making a realignment.

On one hand, the cases have stated that the "intention of Section 1125.1(c) is to require school districts to assign positions to their professional staff strictly on the basis of seniority and to similarly realign their professional staff on the basis of seniority when personnel changes have to be made." *Appeal of Cowden,* 87 Pa. Commonwealth Ct. 165, 169, 486 A.2d 1014, 1016. On the other hand, the cases have also stated that this Court will not substitute its judgment for that of a school board by requiring the board to accept a realignment plan proposed by a suspended or demoted employee where the Board's rejection of the proposed plan is not an abuse of discretion or where the proposed plan would be impractical. *Andresky v. West Allegheny School District,* 63 Pa. Commonwealth Ct. 222, 229, 437 A.2d 1075, 1079 (1981); *Platko v. Laurel Highlands School District,* 49 Pa. Commonwealth Ct. 210, 215-16, 410 A.2d 960, 963 (1980); *Tressler v. Upper Dublin School District,* 30 Pa. Commonwealth Ct. 171, 179, 373 A.2d 755, 759-60 (1977); *Godfrey v. Penns Valley School District,* 22 Pa. D. & C. 466, 472-73 (1981) *aff'd* 68 Pa. Commonwealth Ct. 166, 449 A.2d 765 (1982).

Furthermore, this Court has held:

[A] professional employee does not acquire a vested right to teach in any certain class or in any certain school and the only limitation on the Board's general power to assign a profes-

sional employee is that the work to which he is assigned be of a rank or class equivalent to that by which his permanent status was acquired and one for which he is qualified. . . . In addition, the Board has a right to make reasonable rules and regulations, reassign teachers and take other steps necessary for proper administration of the school system.

*Olson v. Board of School Directors Methacton School District,* 84 Pa. Commonwealth Ct. 189, 191, 478 A.2d 954, 955 (1984) *citing Smith v. School District of the Township of Darby,* 388 Pa. 301, 306, 130 A.2d 661, 665 (1957); *Board of School Directors of Abington School District v. Pittenger,* 9 Pa. Commonwealth Ct. 62, 68, 305 A.2d 382, 385 (1973).

The majority's holding in the case at bar not only divests the school district of its authority to reassign more senior teachers during a realignment, it also grants these teachers the right to select which class or administrative position they wish to occupy. The school district will no longer have the authority to realign professional staff at all, rather the professional staff will realign itself with the most senior employees having first choice of the positions they want. The net result of this decision may very well be that, during a realignment, those professional employees who are not at the very top of the seniority totem pole will lose the job security which the legislature intended to insure because they can be "bumped" by more senior employees. They will be stripped of the protection heretofore afforded by the school district's authority to monitor the overall impact of the realignment.

I do not believe that this is the result intended by the legislature when it stated that:

A school entity shall realign its professional staff so as to insure that more senior em-

ployees are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employees. 24 P.S. §1125.1(c).

I disagree with the majority's contention that the words of this statute are so clear and free from ambiguity as to mandate the conclusion which it reaches. The statute states that "a school entity shall realign . . ." My interpretation of these words is that the school entity shall be authorized to make the final realignment decisions; not that the professional staff shall make the final decision under the auspices of a court order. The statute further states that "more senior employees shall be given the opportunity to fill positions for which they are certificated . . ."; it does not say that these employees shall have the *right* to fill *any* position for which they are certificated and which are being filled by less senior employees. The majority's decision expands the statutory language to divest the school district of its authority over the final realignment decision and grants this authority to the professional staff.

Turning to the facts of the case at bar, we see the following: Appellant has more seniority than Frank Dattilo. The Board considered appointing Appellant to the position of principal of the High School but declined to do so because Mr. Dattilo had greater experience in administering the Senior High and was therefore better qualified, in the judgment of the Board, to meet the needs of the school especially during this period of massive change. Appellant was appointed to a position of rank requiring the same certification as that of his previous position and at the same salary. This appointment conformed to the requirements articulated in *Olson*.

I therefore conclude that the Board has performed its duty by giving first consideration to the seniority

status of the secondary school administrators when developing its realignment plan. *See Welsko.* Within the confines of other legitimate, practical concerns, which I believe the board may properly consider, the Board assigned Appellant to a position of rank equivalent to his prior position by which he acquired his permanent status. *See, e.g., Olson.*

I would hold, therefore, that the District has not violated Section 1125.1(c) of the Public School Code by not appointing Appellant principal of the Senior High. Section 1125.1(c) does not require that more senior employees be permitted to select the position of their choice, but rather that a school board adopt a realignment plan which is consistent with the seniority rights of the professional staff, taking into consideration the practical needs of the District as found to exist by the Board and supported by substantial evidence on the record. Because the Board has met this criterion in the case at bar, I would affirm the order of the trial court.

Judge MACPHAIL and Judge DOYLE join in this dissent.